Marc P. MOTT, Special Agent, Internal Revenue Service, Petitioner,

v.

Jay R. MacMAHON, Respondent.

Civ. No. 41101.

United States District Court
N. D. California, S. D.

Jan. 24, 1963.

Cecil F. Poole, U. S. Atty., by J. J. Kilgariff, San Francisco, Cal., for petitioner.

C. Ray Robinson, John Lockley, San Francisco, Cal., for respondent.

WEIGEL, District Judge.

As a Special Agent of the Internal Revenue Service, Marc P. Mott has filed a "Petition For Attachment of Person as for Contempt". That petition, *inter alia*, asks that Respondent be ordered to appear before said Special Agent to testify, regarding the tax liability of a decedent, without the presence of a shorthand reporter employed by Respondent.[1]

The facts underlying the petition are undisputed. Petitioner, under the authority of Section 7602(2) Title 26, United States Code, served the Respondent with a summons directing the latter to appear before Petitioner on November 13, 1962 to testify regarding the tax liability of a decedent. Respondent, an attorney, appeared at the time and place designated in the summons, bringing with him a Certified Shorthand Reporter.[2]

In the ensuing proceedings as shown by the transcript sworn to be accurate by the Certified Shorthand Reporter (and unchallenged in any respect by Petitioner), Respondent stated:

"I have appeared this morning with a Certified Court Reporter. I am willing to proceed and answer all questions asked of me that are relevant and material to the inquiry. We are expressly waiving a defense of privileged communications and expressly waiving any other defenses provided by our Constitution, legislative enactments and judicial decisions. The taxpayer is paying the cost of the reporter and is willing to supply to the Government a copy of the deposition at no cost to the Government.

"The only request of counsel for the taxpayer is that he have an opportunity to review any transcript prepared by the stenographer for the Government, make any corrections that are appropriate and is willing to sign it under the penalty of perjury. I would only ask for a copy of said transcript.

"If the Government refuses to proceed with this examination in the presence of a Court Reporter and having the testimony taken down objectively, truthfully, and honestly and completely, then the taxpayer will go to Federal District Court and submit this to a judge for his decision."

---

1. At the hearing, Petitioner sought no more than such an order.

2. There is a comprehensive statutory plan regulating the practice of shorthand reporting in California. See, generally, California Business and Professions Code, Sections 8000 to 8032; California Government Code, Sections 69941 et seq. A Certified Shorthand Reporters Board, consisting of two attorneys and three Certified Shorthand Reporters, has been set up to pass on qualifications. California Business and Professions Code, Section 8000 et seq. Only those who pass a stringent examination and receive the certificate issued by the Board may use the title "Certified Shorthand Reporter". California Business and Professions Code, Section 8018. Only such persons are allowed to engage in the practice of shorthand reporting as defined in the statute. California Business and Professions Code, Sections 8016, 8017. When appointed to serve as official court reporter in the state courts, the reporter must take the Constitutional oath taken by all public officers, including legislators and judges. California Government Code, Section 69946; California Constitution, Article XX, Section 3. A court reporter is an officer of the court. Los Angeles v. Vaughn, 55 Cal.2d 198, 10 Cal.Rptr. 457, 358 P.2d 913 (1961). The primary responsibility for the correctness of an official transcript is upon him, and he must certify that it is correct. California Rules on Appeal, Rules 4 and 35. All reporters serving this United States District Court are Certified Shorthand Reporters.

The transcript also shows that Petitioner refused the quoted proposal of Respondent and brought the matter here in the instant proceeding. The transcript shows that there were a total of five persons present at the proceedings before Petitioner, namely, Petitioner, a second Special Agent of the Internal Revenue Service, a shorthand reporter employed by the Service, Respondent, and the Certified Shorthand Reporter accompanying Respondent.

At the hearing of the matter before this court, Petitioner testified that the Internal Revenue Service does not employ Certified Shorthand Reporters, that the policy of the Service, with respect to transcripts of statements such as that sought from Respondent, is to make the transcript available for corrections, that if dispute arises as to the corrections, another statement is taken to give the witness an opportunity to "explain these differences", that it is the policy of the Service to provide witnesses with a copy of statements only after signing by the witness, that Petitioner's authority for exclusion of persons other than the witness and his attorney from hearings such as the one here involved lay in a procedural manual of the Internal Revenue Service, which manual is "secret", that Petitioner's purpose in examining Respondent related not only to a determination of claimed tax liability of the decedent but also to investigation of possible fraud, and that there is no limitation upon the number of Special Agents who may be present at a hearing such as that involved in this case.

The question presented in this proceeding is stated by counsel for Petitioner as follows: Does a witness required to give testimony in an income tax investigation authorized by Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. 7602, have a right to have his personal court reporter present to take notes of his testimony, even though a regular government stenographer is present to record the testimony?

The statute provides, in terms, no answer to the question. Section 7602 authorizes, among other things, the Secretary of the Treasury or his delegate to issue summons and to require testimony under oath. Manifestly, the Section and related provisions of the Internal Revenue Code of 1954 are designed to facilitate determination of tax liability and collection of taxes. There is nothing in the entire statutory scheme to suggest that it was the intention of Congress, in giving the very broad powers to the Secretary or his delegate, that they should be exercised arbitrarily or unreasonably or without proper regard for reasonable means elected by taxpayers or witnesses to take notes of proceedings such as the proceeding here involved. The hearing contemplated by Section 7602 is not one attended by the safeguards inherent in court proceedings to insure fairness and impartiality protecting all parties to a controversy.

At the time of the hearing to which these proceedings relate, it does not appear that any judicial decree had sustained the position of the Internal Revenue Service concerning the tax liability of the decedent nor any other relevant issue between the Service and the taxpayer or the Respondent.

The controversy between the Internal Revenue Service and the taxpayer was, then, in essence, an unresolved disagreement as to money or property or both, and the "hearing" related to that disagreement. The only difference between the parties there and those to a like controversy between two private citizens is that there one contender was an agency of the federal government. That agency is armed by statute with extraordinary powers running the gamut of investigatory rights supplemented by subpoena powers on through to extensive powers of arbitrary assessment, levy and seizure—all exercisable largely at the discretion of the agency, tempered only by powers of judicial review, after the fact of action by the agency. It may be, probably is, desirable that the federal tax gatherer be armed with these broad powers. In any case, the Congress has provided them.

Surely Congress has not provided for excesses or abuse nor is there any basis for assuming that Congress intended that the powers entrusted to the agency should override Constitutional guarantees, nor other rights provided by law nor, indeed, the simple dictates of fair play and common sense.

Here we have a record indicating exemplary cooperation by Respondent in the interest of reaching the truth. The common sense demand for an accurate record of the proceedings fortifies rather than stultifies the objectives of the Internal Revenue Service which must also be to reach the truth. The Service can hardly be prejudiced by the making of an accurate record to be available to it without cost. There is no sound reason requiring that the witness here be in the hands of an adversary for such a record, nor that he should be forced to stand a second or third hearing to determine what transpired at a first, nor that a reviewing court, in case of need, be denied the kind of transcript meeting the qualifications it itself relies upon for memorialization of its own proceedings. Under the circumstances of this particular case, the presence of a Certified Shorthand Reporter presents no obstacle to the achievement of all proper objectives of the Internal Revenue Service. Respondent has not tried to control or direct or interfere.

It is no answer to suggest that the transcript of the stenographer in the employ of the Internal Revenue Service may vary from that of the Certified Shorthand Reporter. It is equally possible that the transcript of that stenographer might vary from the recollection of the witness testifying under oath or of the representatives of that governmental agency who may be present with no limitation as to the number or of the attorney for the witness, if one be present. The truth as to exactly what was said in such a hearing is much more likely to be shown by a transcript prepared by a qualified court reporter who certifies it and does so under the penalties provided by law for inaccuracy or untruthfulness.[3]

The views here expressed follow the teachings of the Supreme Court of the United States, as well as those articulated by the Supreme Court of the State of California. In United States v. Minker, 350 U.S. 179, at page 187, 76 S.Ct. 281, at page 286, 100 L.Ed. 185 (1956), the Supreme Court declared:

"The subpoena power 'is a power capable of oppressive use, especially when it may be indiscriminately delegated and the subpoena is not returnable before a judicial officer. * * * True, there can be no penalty incurred for contempt before there is a judicial order of enforcement. But the subpoena is in form an official command, and even though improvidently issued it has some coercive tendency, either because of ignorance of their rights on the part of those whom it purports to command or their natural respect for what appears to be an official command, or because of their reluctance to test the subpoena's validity by litigation.' Cudahy Packing Co., Ltd. v. Holland, 315 U.S. 357, 363–364 [62 S.Ct. 651, 654, 655, 86 L.Ed. 895]."

Apropos, too, is the holding of the Supreme Court of the State of California in Gonzi v. Superior Court, 51 Cal.2d 586, 335 P.2d 97 (1959), in which that court held that the state statutory right to compel a physical examination of a plaintiff in a personal injury case by the defendant's doctor was qualified by the court-imposed requirement in the interest of "orderly procedure in the ad-

3. A Certified Shorthand Reporter is liable for the suspension or revocation of his certificate for fraud, dishonesty, corruption, wilful violation of duty, gross incompetency in practice, or unprofessional conduct, California Business and Professions Code, Section 8025, and for the penalties of perjury for wilfully swearing to the correctness of a false transcript. California Penal Code, Section 118 et seq.

**24**

ministration of justice" that plaintiff could not be denied the right to have a reporter present during the doctor's examination. The court granted this right to the plaintiff, notwithstanding that the latter had a statutory right to obtain a copy of the detailed report of the examining physician.

In Torras v. Stradley, 103 F.Supp. 737 (N.D.Ga.1952), and in In re Neil, 209 F.Supp. 76 (S.D.W.Va.1962), the learned respective district courts held that a witness might be compelled to testify under Section 7602 (the same Section here involved) without the presence of a reporter brought by the witness. The specific facts in one or both of those cases may vary from those in the instant proceeding. However, whether or not that be so, I am impelled here, on the facts before me and for the reasons stated, to conclude that the right asserted by the Respondent here should have been honored.

At the hearing before this court, Petitioner urged that the presence of the Certified Shorthand Reporter would have entailed violation of Section 7213 of Title 26, United States Code, prohibiting any officer or employee of the United States from divulging certain information. The answer to this contention is, of course, that the prohibitions against disclosure, if applicable, may bind the Service but not Respondent whose testimony the Service seeks to compel. Respondent is not an officer or employee of the United States.

▇▇ Some time after the hearing on the Order To Show Cause in this matter and submission thereof to the court, Petitioner filed a document consenting to the entry of an order quashing the Order To Show Cause and dismissing the action. Prior to the filing thereof, Respondent had filed his answer to the petition. Respondent, in addition, has not only refused to consent to the dismissal but opposes it. Rule 41 of Federal Rules of Civil Procedure provides, under these circumstances, that an action shall

not be dismissed at the plaintiff's instance save upon order of the court. In the exercise of the implied discretion vested in the court thereby, it is held that the consent comes too late.

The petition is denied.