BOARD OF EDUCATION OF HAWTHORNE SCHOOL DISTRICT NO. 17, MARENGO, Plaintiff-Appellee, *v.* JEANNE ECKMANN *et al.*, Defendants-Appellants.

Second District    No. 81-860

Opinion filed February 19, 1982.—Rehearing denied March 25, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Patricia Rosen and Kathryn Spalding, Assistant Attorneys General, of counsel), for appellants.

Wayne F. Weiler, of Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Board of Education of Hawthorne School District No. 17, Marengo, Illinois (Board), filed its complaint for declaratory and injunctive relief against the defendants, Illinois Department of Human Rights (Department), several of the Department's employees, and Jeanne Eckmann, a tenured school teacher employed by the plaintiff. On plaintiff's motion the trial court granted a preliminary injunction enjoining defendants from conducting a scheduled fact-finding conference in the matter of Jeanne Eckmann "in such fashion as to prohibit plaintiff from making a report of proceedings at said conference through a court reporter at plaintiff's own expense." The Department has taken this interlocutory appeal pursuant to Supreme Court Rule 307(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 307(a)).

The complaint and exhibits attached thereto reveal the following. Jeanne Eckmann, a tenured teacher within Hawthorne School District No. 17, received a resolution from the Board dated July 20, 1981, which stated that her performance as a teacher had been unsatisfactory and that unless she remedied these deficiencies there would be cause which may result in charges against her and her dismissal. A letter accompanying the resolution stated that these deficiencies had been discussed with her in the past and that she should remove and remedy the causes behind the defects. Generally, the Board charged Ms. Eckmann with failure to establish the proper rapport with her students; failure to create an atmosphere conducive to learning; failure to cooperate with other members of the school staff and parents; and becoming pregnant outside the state of marriage, which diminished her ability to teach and the ability of her students to learn from her.

On August 13, 1981, Ms. Eckmann filed a charge of unfair employment practice with the Department based on sex discrimination. In her written charge she stated that she has been employed by Hawthorne School District No. 17 for four years; never once was she notified of any deficiencies in her teaching performance; in November 1980, as the result of a rape, she became pregnant; on June 12, 1981, the Board asked her for her resignation on the basis of immorality; on June 15, 1981, she attended a Board meeting accompanied by 17 parents who were in support of her actions; she had the support of Edward O'Brien, the superintendent of schools, Hawthorne District No. 17; at the June 15 meeting, she requested that Dr. John Mack, National Education Association Area Director, explain to the Board the legal ramifications of a morality charge; and that she subsequently received the Board resolution of July 20, 1981.

Pursuant to its regular procedures, the Department, on August 25, 1981, sent the Board a notice that a charge had been filed against the Board and requested an answer to the charge. Subsequent correspondence from the Department stated that an investigation would be held beginning with a fact-finding conference which would ascertain whether there was a basis for a negotiated settlement of the charge. The date, time, and place of the conference was stated, as well as a brief summary of the purpose of the conference, the procedures, and the Board's rights therein. In a subsequent letter to the Board, the Department specifically stated that a court reporter would not be allowed at the fact-finding conference. The Board then filed its complaint seeking declaratory and injunctive relief. Essentially, the Board complains that the Department's Rule 4.4(b) prohibiting the Board from making a report of the proceedings of the fact-finding conference through a court reporter at its own expense would prejudice it in any subsequent proceedings. Thereafter, before responsive pleadings were filed by the defendants, the plaintiff moved for a preliminary injunction. After hearing legal arguments of both counsel based upon the complaint and exhibits attached thereto, the trial court granted a preliminary injunction enjoining defendants from conducting the scheduled fact-finding conference "in such a fashion as to prohibit plaintiff from making a report of proceedings at said conference through a court reporter at plaintiff's own expense."

■■■ Initially, we comment briefly on the appropriateness of injunctive relief before exhaustion of the administrative procedures established by statute and the Department's rules. Generally, when the legislation creating an administrative agency in Illinois expressly adopts the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) as the mode of review, Illinois courts have consistently held that the remedy under the Act is exclusive and that alternate methods of direct review or collateral attack are not permitted. (*People ex rel. Petersen v. Turner Co.*

(1976), 37 Ill. App. 3d 450, 456, 346 N.E.2d 102.) However, when a party is attacking a statute or an administrative rule on its face, he need not exhaust administrative remedies. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548, 370 N.E.2d 223.) Since the Board is attacking the validity of one of the Department's rules, the present action is within the jurisdiction of the court.

The Department contends on appeal that the issuance of a preliminary injunction was improper since its rule prohibiting the presence of a court reporter at the fact-finding stage does not violate the Board's due process right and that the legal requisites for injunctive relief were not present. The Board argues that the trial court did not abuse its discretion in granting the preliminary injunction and that due process and common sense require that the Board be allowed the opportunity to have a court reporter present at its own expense.

First, we turn to some well-established principles applicable to injunctive relief. An injunction is an exceptional remedy which is not granted as a matter of course but with great caution and only when the plaintiff's right to such relief is clearly established. (*Parsons v. Walker* (1975), 28 Ill. App. 3d 517, 521, 328 N.E.2d 920.) The grant or denial of an injunction is discretionary with the trial court and will not be disturbed unless there is an abuse of discretion. (*Plasti-Drum Corp. v. Ferrell* (1979), 70 Ill. App. 3d 441, 452, 388 N.E.2d 438.) The requirements for the issuance of a preliminary injunction are well settled. For such an injunction to issue, the plaintiff must establish: (1) that he possesses a certain and clearly ascertained right which needs protection; (2) that he will suffer irreparable injury without the protection of an injunction; (3) that there is no adequate remedy at law for his injuries; and (4) that he is likely to be successful on the merits. (*Midwest Micro Media, Inc. v. Machotka* (1979), 76 Ill. App. 3d 698, 702, 395 N.E.2d 188; *Crest Builders, Inc. v. Willow Falls Improvement Association* (1979), 74 Ill. App. 3d 420, 422, 393 N.E.2d 107; *Bromberg v. Whitler* (1977), 57 Ill. App. 3d 152, 155, 372 N.E.2d 837.) As these rules are applied to the case at bar, we focus primarily on whether the Board has established that it possesses a certain and clearly ascertained right which needs protection by injunctive relief.

The Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 *et seq.*) replaced the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*) effective July 1, 1980. One of its purposes is to secure freedom from discrimination because of sex in connection with employment. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—102(A).) The statute also expresses as public policy the protection of Illinois citizens against "unfounded charges of unlawful discrimination." (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—102(E).) In order to effectuate these goals of equal employment opportunity for the employee and

protection for the employer against unwarranted claims, the legislature established procedures to determine the validity of a complainant's charge. The complaining party must file a charge of discrimination with the Department within 180 days of the alleged discriminatory act by the employer. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(A).) After notice to the employer, the Department shall conduct an investigation of the charge and has the power to subpoena witnesses and documents. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(C)(1), (C)(2).) Upon reasonable notice to all parties, the Department may conduct a fact-finding conference. While the decision to conduct the conference rests within the Department's discretion, the statute directs that the conference must be held within 120 days from the date the charge was filed with the Department. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(C)(3).) The failure to attend the conference without good cause may result in dismissal of the charge or default against the employer. However, such dismissal or default does not bar a party from seeking review before the Illinois Human Rights Commission (Commission). (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 8—103(B).) A notice of dismissal or default shall be issued by the Director, who shall notify the relevant party that a request for review may be filed in writing with the Commission within 30 days of receipt of such notice. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(C)(3).) Each investigated charge shall be subject to a confidential report to the Director. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(D).) Further statutory provisions provide for a formal conciliation conference if the Director determines there is substantial evidence of a violation of the Act and, upon a failure to settle or adjust any charge, the authority of the Department to prepare and file a written complaint with the Commission. Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(F).

Once a complaint is filed with the Commission, the statute provides for notice of a hearing before a hearing officer, amendment of and answer to the complaint, hearing procedures, written findings of fact and decision by the hearing officer and review and rehearing by the Commission. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 8—103 through 8—107.) The Commission's final order is subject to judicial review under the Administrative Review Act. Ill. Rev. Stat., 1980 Supp., ch. 68, par. 8—111.

The Act empowers the Department "[t]o adopt, promulgate, amend, and rescind rules and regulations not inconsistent with the provisions of this Act pursuant to the Administrative Procedure Act." (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—101(A).) Under that authority the Department has enacted section 4.4(b) (Rules and Regulations of the Department of Human Rights, section 4.4(b)), which provides as follows:

"(b) *Attorneys, Witnesses.* A party may be accompanied at a fact-finding conference by his/her attorney or another representa-

tive, and by a translator if necessary. An attorney for a party not previously having entered an appearance shall do so at the outset of the conference. The parties may bring witnesses to the conference in addition to those whose attendance may be specifically requested by the Department, but the Department employee conducting the conference shall decide which witnesses shall be heard and the order in which they are heard. The Department employee conducting the conference may exclude witnesses and other persons from the conference when they are not giving evidence, except that one representative of each party and counsel shall be permitted to remain throughout. The Department employee shall conduct and control the proceedings. *No tape recording, stenographic report or other verbatim record of the conference shall be made.*" (Emphasis added.)

As applied to this case, by letter to the Board dated September 16, 1981, Deborah D. Smith, an investigator for the Department and a defendant in this suit, stated that a court reporter would not be allowed to attend the fact-finding conference, to be held on October 9, 1981, investigating the charge filed against the Board. It is the enforcement of this rule which has led to the controversy in question and the issuance of the preliminary injunction.

Uppermost in determining the validity of a regulation is whether it furthers the legislative intent as discerned from the statute. (*Owens-Illinois, Inc. v. Bowling* (1981), 99 Ill. App. 3d 1117, 1125, 425 N.E.2d 1288.) Most recently, our supreme court in *Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877, reviewed the legal principles applicable to administrative rules and regulations as follows:

"While an agency may not issue regulations which exceed or alter its statutory power (*Ruby Chevrolet, Inc. v. Department of Revenue* (1955), 6 Ill. 2d 147, 151) or which are contrary to the legislative purpose and intent of the statute (*People ex rel. Illinois Highway Transportation Co. v. Biggs* (1949), 402 Ill. 401, 409), an administrative agency has authority to regulate and execute the provisions of the statute and to carry out the powers conferred upon it. (See *Hill v. Relyea* (1966), 34 Ill. 2d 552, 555; *Owens v. Green* (1948), 400 Ill. 380, 398.) Further, the promulgated rules and regulations will be presumed to be valid and to have the force and effect of law. *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58, citing *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 485; 2 Am. Jur. 2d Administrative Law sec. 298 (1962); *People ex rel. Colletti v. Pate* (1964), 31 Ill. 2d 354, 359." 86 Ill. 2d 60, 70-71, 426 N.E.2d 877.

From our examination of the Illinois Human Rights Act and the specific procedures found therein for investigation, settlement and dismissal of charges of discrimination prior to filing a complaint with the Commission, we believe there is a clear legislative intent to promote the voluntary settlement, conciliation and adjustment of discrimination charges. Prior to the filing of a complaint before the Commission, the statute provides for a fact-finding conference. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(C)(3).) This section indicates a legislative intent to obtain both parties' versions of the discrimination charge at an early stage of the proceedings. The predecessor to the subject section of the Illinois Human Rights Act is section 8(b) of the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 858(b)), which made the convening of a fact-finding conference mandatory. Although the mandatory provision was changed to a discretionary one under the new act, the same salutary purpose of such a conference still exists. The importance of the fact-finding conference under the former act was commented on by our supreme court in *Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99, 411 N.E.2d 277, as follows:

"Under section 8(b) of the interests of both employee and employer can be served in that each is given an opportunity to discuss and possibly settle the dispute without formal action being taken against the employer by the Commission. Through a conference, unnecessary costs may be avoided and the Commission permitted to devote itself to other matters. Even if a settlement is not reached at this stage, the proceeding can be importantly valuable to the Commission in that the conference not only places the Commission in a better posture to decide whether to dismiss the employee's charge, it also aids the Commission in setting up a procedural framework for the conciliatory process which follows. (See Ill. Rev. Stat. 1979, ch. 48, par. 858(c).) The public interest in an expeditious resolution of disputes which is made possible through section 8(b) is not less important than the financial considerations discussed in *Springfield-Sangamon*. Avoiding unnecessary expenditures of time and money by all parties serves to further the stated policy of the Act, which is not only to protect employees from unfair employment practices but also to protect 'employers, labor organizations and employment agencies from unfounded charges of discrimination.' Ill. Rev. Stat. 1979, ch. 48, par. 851." (82 Ill. 2d 99, 105-06, 411 N.E.2d 277.)

While the mandatory conference provisions have now been eliminated, we still find the reasoning of our supreme court relevant and compelling.

Several other provisions of the Illinois Human Rights Act reveal a legislative intent to promote the settlement of discrimination charges

prior to formal proceedings before the Commission. The provisions for a formal conciliation conference "to endeavor to eliminate the effect of the alleged civil rights violation and to prevent its repetition" is a step to settle disputes without a formal complaint to the Commission. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(D)(2)(b).) In addition, explicit settlement provisions are an integral part of the Act. See Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—103.

■■ Focusing once again on the disputed rule prohibiting a verbatim record of the fact-finding conference, we find that it is not inconsistent with the provisions of the Act. We perceive the fact-finding conference to be an opportunity for the Department to gather facts from both parties and promote settlement or other resolution of the charge whenever possible. Each investigated charge shall be the subject of a confidential report to the Director who shall, upon review, determine whether there is substantial evidence that the alleged civil rights violation has been committed. (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(D).) Without the free flow of information at the fact-finding conference, it is obvious that the Director may be hampered in making his determination of whether a violation may have occurred. The presence of a court reporter or other device for making a verbatim record can reasonably be said to inhibit the fact-finding nature of this proceeding. As each party may have counsel at this conference, it could easily be transformed into an adverse proceeding with formal objections and offers of proof "for the record." Thus, we conclude that there is nothing to support any contention that the rules and regulations are in clear contravention of the spirit and letter of the Act. See *Ruby Chevrolet, Inc. v. Department of Revenue* (1955), 6 Ill. 2d 147, 151, 126 N.E.2d 617.

We must next determine whether any due process right will be denied the Board by the threatened enforcement of Rule 4.4(b) by the Department. The Department characterizes the fact-finding conference as an "investigative stage" to determine whether substantial evidence exists of discrimination against the employee. As such, the Department contends, traditional due process safeguards required at a formal administrative adjudicative proceeding are not required here. The Board contends that the fact-finding conference is a "hearing," and since a determination to dismiss the charge or default a party for nonattendance may be subject to judicial review under the Administrative Review Act, a party should have a right to preserve its claim for judicial review "by making a record."

Administrative as well as judicial proceedings are governed by the fundamental principles and requirements of due process of law. (*Scott v. Department of Commerce and Community Affairs* (1981), 84 Ill. 2d 42, 51, 416 N.E.2d 1082; *Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 454, 227 N.E.2d 754.) However, when an agency conducts a

nonadjudicative, fact-finding investigation, it is not necessary that the full panoply of judicial procedures be used. (*Hannah v. Larche* (1960), 363 U.S. 420, 4 L. Ed. 2d 1307, 80 S. Ct. 1502.) In *Hannah v. Larche* (1960), 363 U.S. 420, 4 L. Ed. 2d 1307, 80 S. Ct. 1502, the Supreme Court gave a detailed analysis of the difference between an investigation and a hearing. The court stated that the requirements of due process vary with the type of proceeding involved. (363 U.S. 420, 440, 4 L. Ed. 2d 1307, 1320, 80 S. Ct. 1502, 1513.) "[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." (363 U.S. 420, 442, 4 L. Ed. 2d 1307, 1321, 80 S. Ct. 1502, 1514-15.) The court went on to note that the investigative process would be disrupted if each investigation were transformed into a trial-like proceeding. The fact-finding process would be diverted from its legitimate goals by collateral issues. (363 U.S. 420, 443, 4 L. Ed. 2d 1307, 1322, 80 S. Ct. 1502, 1515.) The rights associated with a fact-finding investigation are merely a general notice as to the purpose and scope of the investigation. 363 U.S. 420, 446, 4 L. Ed. 2d 1307, 1323, 80 S. Ct. 1502, 1516-17.

The Illinois Appellate Court also has addressed the question of the procedural protections that must be afforded parties at an investigative stage in administrative proceedings in *Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370. In *Klein*, the plaintiff employee appealed the commission's dismissal of her complaint for lack of substantial evidence. The plaintiff argued that the investigative procedures of the Fair Employment Practices Act (the predecessor of the Illinois Human Rights Act) deprived her of due process of the law because she had no right to participate in the proceedings. The court rejected plaintiff's argument, stating:

> "Rights of discovery, confrontation, cross-examination, and other elements of due process attending judicial and quasi-judicial proceedings do not apply in investigative proceedings. (*Hannah v. Larche* (1960), 363 U.S. 420.) Investigations conducted by administrative agencies attempt to discover and produce evidence not for the purpose of [adjudicating guilt or proving a pending complaint but rather for the purpose of] determining whether facts exist to justify the institution of a complaint. (*Genuine Parts Co. v. Federal Trade Com.* (5th Cir. 1971), 445 F.2d 1382.) An efficient investigation obviously could not be achieved if every investigation could be converted into a trial. See *Bowles v. Baer* (7th Cir. 1944), 142 F.2d 787; *Haines v. Askew* (M.D. Fla. 1973), 368 F. Supp. 369, *aff'd* (1974), 417 U.S. 901.
>
> In our view the above cases are authority that plaintiff has no constitutional right of participation in the investigation of her charge. Such participation would entitle every complainant to a

hearing regardless of the validity of the allegations of one's charge. (See *Marshall v. Fair Employment Practice Com.* (1971), 21 Cal. App. 3d 680, 98 Cal. Rptr. 698.) It would be impossible to conduct an efficient investigation. Such participation is neither required by the Constitution nor by the legislature." (31 Ill. App. 3d 473, 482-83, 334 N.E.2d 370.)

This decision has been cited for that same proposition of law in *Chambers v. Illinois Fair Employment Practices Com.* (1981), 96 Ill. App. 3d 884, 888, 422 N.E.2d 130. In *Klein*, the court also noted that plaintiff could seek judicial review of the Commission's order since the Commission must supply written reasons justifying the dismissal of a charge. Ill. Rev. Stat., 1980 Supp., ch. 68, par. 8—111.

Under the Illinois Human Rights Act, an elaborate two-step process for investigation of charges by the Department and filing of a formal complaint before the Commission was enacted by the legislature. We are here concerned only with the narrow issue of whether the denial of a court reporter at a fact-finding conference in the investigation stage of a discrimination charge is a denial of due process. Considering the purposes of the Act and the enumerated procedural rights afforded therein at both the investigative and adjudication stage, Rule 4.4(b) is not inconsistent with the provisions of the Act nor does it infringe on any due process right. While cases cited by the Board, *NLRB v. Southern Transport, Inc.* (8th Cir. 1966), 355 F.2d 978, and *Mott v. MacMahon* (N.D. Cal. 1963), 214 F. Supp. 20, do generally stand for the proposition that keeping of a record is invaluable in protecting the rights of all parties for review, they are clearly distinguishable as they involve factual situations where the hearing at issue was an integral stage in the determination of the rights and liabilities of the parties. Such is not the situation in the case before us. We are not involved here in the adjudication of the rights of the parties before the Commission. Nor is there a lack of disclosure of the charge or failure to provide notice of the fact-finding conference prior to the conference at this investigation stage. Thus, we do not consider the rule prohibiting a verbatim record at the conference, even with the Board's willingness to pay for any expense involved, a deprivation of any due process right.

As the Board has failed to show that it possesses a certain and clearly ascertained right which needs protection which is a necessary prerequisite for issuance of a preliminary injunction, we find the trial court abused its discretion and reverse its order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HOPF and UNVERZAGT, JJ., concur.