WOODWARD GOVERNOR COMPANY, Appellee, v. THE HUMAN RIGHTS COMMISSION, Appellant (Billie Raymer, Defendant).

Second District    No. 84—0729

Opinion filed December 19, 1985.

Neil F. Hartigan, Attorney General, of Springfield (James P. Nally and Jill Wine-Banks, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Michael W. Duffee, of Vedder, Price, Kaufman & Kammholz, of Chicago, and Robert E. Reuterfors, of Kostantacos, Traum, Reuterfors & McWilliams, of Rockford, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

Woodward Governor Company (Woodward) filed an administrative review complaint in the circuit court of Winnebago County to review an order and decision of the Illinois Human Rights Commission (Commission). The Commission affirmed the recommended order and decision of the administrative law judge finding Woodward guilty of unlawful sex discrimination in its dress code. The trial court reversed the Commission decision, and the Commission appealed.

The basis of this case is a charge of sex discrimination filed by Ms. Billie Raymer on December 28, 1979, before the Illinois Fair Employment Practices Commission alleging a violation of the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*). (It should be noted that this act was thereafter replaced by the Illinois Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*), effective July 1, 1980, and that the Human Rights Commission assumed jurisdiction over all actions pending before the Fair Employment Practices Commission (Ill. Rev. Stat. 1981, ch. 68, par. 9—102).) Raymer claimed Woodward, her employer, was guilty of unlawful discrimination based upon sex by permitting men to wear slacks and boots while at work while forbidding women to do so under its dress code.

On October 22, 1980, the Department of Human Rights, responsi-

ble for investigation of such charges, found substantial evidence to support the charge, and filed a formal complaint of civil rights violation with the Commission, charging the company with unlawful discrimination on the basis of sex.

The parties agreed to submit the cause for determination based on a stipulated record and cross motions for summary judgment. On November 25, 1981, the administrative law judge (ALJ) of the Commission filed a recommended order and decision.

The ALJ made a finding of fact that the company maintained a dress code which expressly prohibited female employees from wearing slacks or boots, while permitting similarly situated men to wear such attire solely on account of their sex. The ALJ then determined that Woodward's dress code was not equally enforced and that it operates more restrictively or otherwise has a discriminatory impact upon female employees. This established a *prima facie* case of sex discrimination. Women did not violate fundamental community standards concerning appropriate male/female demeanor by wearing slacks and dress boots in a factory's manufacturing or office area. Woodward failed to show that the unequal application or effect of the appearance standard is a business necessity.

The ALJ decision noted that this determination was consistent with Illinois Fair Employment Practices Commission precedents as well as Illinois and Federal employment discrimination rulings. The ALJ then recommended that the Commission order Woodward to cease and desist the provisions of its dress code which prohibit female employees from wearing slacks and boots.

On August 3, 1982, a divided panel (2 to 1) of the Commission affirmed and adopted the findings of the ALJ, and ordered Woodward to cease and desist in the maintenance of all provisions of its dress code which prohibited female employees from wearing slacks and boots. The Commission's decision was finalized by order entered January 28, 1983.

Woodward filed a complaint for administrative review in the circuit court of Winnebago County on February 9, 1983, seeking reversal of the Commission's decision. Hearings were held in the matter on June 11, 1984, and July 12, 1984.

Raymer and Woodward agreed to pursue related litigation regarding the same dress code issues, pending in the United States District Court for the Northern District of Illinois. After denying motions for summary judgment filed by both parties, the Federal district judge set the case for trial.

On February 20, 1984, Raymer and Woodward executed a settle-

ment agreement in which, *inter alia*, Woodward would modify its dress code to permit the wearing of boots but not slacks by women, and Raymer would dismiss the Federal suit and seek to withdraw her charge before the Commission.

To secure resolution of the matter and implementation of the settlement, on several occasions between February 24, 1984, and April 20, 1984, Woodward's counsel contacted Kent Sezer, the Commission's general counsel, informing him of the settlement and that Raymer now sought to withdraw her charge which was the basis for the Commission's decision. Sezer refused to permit such withdrawal on the Commission's behalf. Sezer stated that the Commission did not believe its regulations regarding settlements were effective once it made a final administrative decision. He further indicated that although the Commission had no objections to Woodward settling its dispute with Raymer, the Commission wished to retain its order against Woodward to benefit future potentially aggrieved female Woodward employees.

On May 1, 1984, Woodward filed a motion with the trial court to compel the Commission to approve the settlement agreement pursuant to the terms of the Illinois Human Rights Act and the Commission's own regulations. The trial court heard the arguments of Woodward and the Commission concerning the motion and ruled on the motion in conjunction with the decision on Woodward's entire administrative review action. The court thereby ordered "[t]he Settlement Agreement between Woodward Governor Company and Billie Raymer, dated February 20, 1984 was knowingly and voluntarily entered into, constitutes a fair agreement, and is hereby approved and the parties are bound to it." Moreover, the court ordered Woodward to pay $11,500 in Raymer's attorney fees, which sum was to be held in escrow pursuant to the settlement agreement.

The Commission appealed, raising two assignments of error: (1) that the trial court erred in reversing the Commission's decision finding Woodward guilty of sex discrimination, and (2) that the trial court erred in requiring the Commission to approve the settlement agreement. In view of our disposition of this case, we need only address the settlement agreement issue.

The Commission's position is that it was not required to approve the settlement agreement entered into between Raymer and Woodward. The Commission entered its order against Woodward on January 28, 1983, and Woodward thereafter filed its complaint for administrative review in the trial court, seeking reversal of the Commission's decision. On February 18, 1983, the trial court granted Woodward's motion to stay the Commission's decision. The Commis-

sion argues it was not required to approve the settlement agreement between Raymer and Woodward since the proceedings before the Commission had already taken place and the Commission had entered a final order. The Commission contends only a "charge" or "complaint" may be settled, and once a final administrative decision is reached, no settlement may occur.

Section 7—103 of the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 7—103) establishes the statutory framework for settlement. It provides: "A settlement of any charge or complaint may be effectuated at any time upon agreement of the parties and the approval of the Department [of Human Rights]." (Ill. Rev. Stat. 1983, ch. 68, par. 7—103(A).) A "charge" is defined as "an allegation filed with the Department by an aggrieved party or initiated by the Department under its authority," and a "complaint" is defined as "the formal pleading filed by the Department with the Commission following an investigation and finding of substantial evidence of a civil rights violation." Ill. Rev. Stat. 1983, ch. 68, pars. 1—103(C), (F).

■ Although this court has concluded that the Illinois Human Rights Act reveals "a legislative intent to promote the settlement of discrimination charges prior to formal proceedings before the Commission" (*Board of Education v. Eckmann* (1982), 103 Ill. App. 3d 1127, 1133-34), that does not necessarily imply a settlement cannot occur after the Commission proceedings have taken place. Moreover, section 8—107(G) of the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 8—107(G)) and section 10.6 of the Commission's regulations vest the Commission with the power to modify or set aside any Commission order "at any time prior to a final order" of the circuit court. This language means exactly what it says.

In addition, section 3.2 of the Commission's regulations addresses the circumstances under which the Commission will consider a proposed settlement by the parties. It provides:

"Section 3.2. *Consideration by Commission*—Proposed terms of settlement shall be considered by a three-member panel of the Commission. If the proposed terms are unambiguously drawn, not inconsistent with the Act, and knowingly and voluntarily entered into, *the Commission shall approve them* by entering an order incorporating the terms of settlement and dismissing the charge pursuant thereto. Said order shall be served by the Commission on the Department and the parties." (Emphasis added.)

The settlement agreement in the present case is unambiguous and was knowingly and voluntarily entered into. Since the agreement

complied with all the requirements, we conclude the Commission was required to approve the settlement.

The Commission's argument that a settlement can occur only at the "charge" or "complaint" level, and not after a Commission decision has been reached, is contrary to the statutes and regulations. This narrow interpretation fails to consider that a charge or complaint actually embodies a dispute which the complainant has with his or her employer. When the complainant and employer agree to settle a charge or complaint, they are in effect settling the dispute raised in that pleading. The fact that the Commission has rendered its decision does not imply that a dispute no longer remains; it indicates that the Commission has agreed with one side in the dispute. Moreover, section 7—103 expressly permits settlements "at any time." (Ill. Rev. Stat. 1983, ch. 68, par. 7—103.) The plain language of the statute means just that, and should not be interpreted to mean "at any time prior to the entry of the Commission decision," as the Commission seems to be arguing.

In view of the clear language of section 7—103, and the absence of any particular preclusion of settlements once a Commission decision is issued, then the only time restriction on the Commission in approving a settlement of a case is that in section 8—107(G)—until the trial court issues a decision on administrative review. Here the settlement agreement was unambiguous and knowingly and voluntarily entered into before any decision by the trial court.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.