GLASSWORKS, INC., Plaintiff-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 86—0539

Opinion filed December 14, 1987.—Rehearing denied January 11, 1988.

Feldman & Romer, of Chicago (Judith A. Halprin, of counsel), for appellant.

Lerner, Bridge & Reiss, Ltd., of Chicago (Timothy A. Bridge and Jeffrey, M. Lerner, of counsel), for appellees.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Djeadj Molnar (Molnar), the complainant, filed a "charge of discrimination" against Glassworks, Inc. (Glassworks), with the Illinois Department of Human Rights (DHR). The complaint alleged that Glassworks terminated Molnar from his position with them because of his national origin as a Yugoslavian and that Glassworks' action con-

stituted discrimination under the Illinois Human Rights Act. (Ill. Rev. Stat. 1985, ch. 68, par. 8—101 *et seq.*) Thereafter, when Glassworks failed to appear for a fact-finding hearing, Glassworks was defaulted by the DHR and, on appeal, the Illinois Human Rights Commission (HRC) affirmed the default and remanded the matter to the DHR for a hearing on specific damages. Subsequently, the DHR entered an order which found Glassworks liable by reason of the default judgment and awarded Molnar damages; the HRC then affirmed this order. However, before the order could be enforced, Glassworks filed a complaint for review of the HRC order in the circuit court of Cook County. In response, Molnar moved in the circuit court to dismiss Glassworks' complaint for administrative review on the grounds that Glassworks failed to properly preserve its right to review. After a hearing, the court granted Molnar's motion. Glassworks then filed a notice of appeal and this appeal followed.

The factual and procedural background of this case is important in considering the issues raised in this appeal. Molnar, a native of Yugoslavia, was employed by Glassworks as a customized mirror installer from September 17, 1979, until his discharge on October 20, 1982. On November 10, 1982, Molnar filed the charge herein alleging a civil rights violation against Glassworks pursuant to the Human Rights Act. (Ill. Rev. Stat. 1985, ch. 68, par. 8—101 *et seq.*) Based on this action, Victoria Holmes, a case investigator for the DHR, began an investigation of the allegations in an effort to verify the information set forth in Molnar's charge. Upon contacting Glassworks, she was referred by Glassworks to their attorney, Jerome Feldman. The case investigation notes of Holmes indicated that Glassworks' officers, Mr. and Mrs. Harris, and Glassworks' attorney, Mr. Feldman, were uncooperative. Specifically, Holmes' investigative report noted that Feldman hung up on her when she telephoned him to set a fact-finding conference with Glassworks' officers, Molnar, and Molnar's attorney on January 20, 1983. Thereafter, on January 25, 1983, Holmes sent Feldman and the Harrises a notice that a fact-finding conference would be held on March 2, 1983. Holmes also sent to Feldman a questionnaire to complete on behalf of Glassworks as part of the case investigation. The questionnaire provided that it was to be returned to Holmes by February 10, 1983, but an incomplete set of answers to the questionnaire was not returned until February 28, 1983 (the final documents necessary to complete the answers were apparently filed March 23, 1983). When Holmes contacted Feldman's office on February 14, 1983, to find out why the questionnaire had not been returned, she was told by a secretary that Feldman was unavailable and

could not speak to her. Since she was unable to speak with Feldman, she advised his office that she would grant a short extension of time for filing the questionnaire until February 18, 1987.

Subsequently, on February 28, 1983, Glassworks' attorney, Feldman, contacted Holmes and said that he had completed most of the questionnaire, but requested an additional extension of time to file the employee time cards that had been requested in the questionnaire. He promised to send the completed portion of the questionnaire to the HRC on that very day. After Holmes had spoken with Feldman, she spoke to Molnar's attorney, Timothy Bridges, who refused to agree to an extension. Holmes then immediately telephoned Feldman that same day to notify him that an extension would not be granted. However, Feldman insisted that there had been an agreement concerning an extension to March 23, 1983, and stated that he would not attend the fact-finding conference scheduled for March 2, 1983. After the conversation, Holmes sent Feldman another letter advising him of the consequences of not appearing at a fact-finding conference, and specifically warned him that failure to appear would result in an order of default being entered against his clients. Later, Feldman sent a letter to both the director and the manager of the charge processing division of the DHR, dated March 1, 1983, in which he accused Holmes and Molnar's attorney, Mr. Bridges, of acting in collusion against him and asserted that Holmes had a personal prejudice against him because he was a "Jewish" attorney. In the letter, he also requested that, because of this prejudice, a new case investigator should be appointed to the case and that he should be granted a continuance of the fact-finding conference scheduled for March 2.

On March 2, 1983, the fact-finding conference was held and Molnar, Bridges, and Feldman's partner, Mr. Romer, attended. Romer read a statement to Holmes which informed her that the Harrises were on vacation and were unable to attend and that because of prior trial commitments, Feldman also would not attend. Glassworks was allowed until April 19, 1983, to avoid the entry of a default judgment by submitting a statement of reasons justifying Feldman's and the Harrises' failure to attend the fact-finding conference.

While Glassworks did not file a statement of reasons on April 19, 1983, it did file a "motion to vacate the proposed entry of default," citing Holmes' abusive attitude as its reason for failing to answer the questionnaire within the time provided, and again attempted to argue the merits of the case. The DHR director, however, found that this was an inadequate response concerning Feldman's and the Harrises' failure to attend the March 2 fact-finding conference. Accordingly, the

DHR denied the motion and entered a default judgment against Glassworks.

The order of default entered against Glassworks specifically found that the April 19, 1983, response failed to show good cause for Glassworks' failure to attend the scheduled hearing. Thereafter, Glassworks appealed the entry of default to the HRC. The HRC, on August 31, 1983, affirmed the order of default and noted in its order that Glassworks was given 36 days' prior notice of the scheduled conference and that Glassworks had made no request for a continuance until two days before the hearing. The HRC concluded, in its order:

"At that point Mr. and Mrs. Harris were already out of town. Accordingly, we believe the fact that Mr. and Mrs. Harris were on vacation at the time of the fact finding hearing was not—under the circumstances of this case—'good cause' for their failure to appear."

The HRC then remanded the case to the administrative law division for the sole purpose of holding a hearing on the issue of damages.

On December 2, 1983, a hearing was held on the issue of damages. At the conclusion of this hearing, Molnar requested that Glassworks be ordered to cease and desist from discriminating against individuals on the basis of national origin, that he be reinstated, that he be awarded back pay of $28,368, and that he be awarded attorney fees as provided for in section 8—108(G) of the Human Rights Act. (See Ill. Rev. Stat. 1985, ch. 68, par. 8—108(G).) The administrative law judge issued an interim recommended order and decision on October 16, 1984, which found Glassworks guilty of a civil rights violation committed against Molnar, as a matter of law, because Glassworks had been found to be in default. Additionally, the order found that Molnar had attempted to mitigate his damages since his termination from Glassworks and that Molnar was entitled to damages, as requested, in the amount of the difference between what he earned at Glassworks and what he was currently earning. The administrative law judge recommended a total award of $30,845.40 plus attorney fees to Molnar, less unemployment compensation, and that a cease and desist order be entered against Glassworks prohibiting further discrimination based on national origin.

Glassworks then timely filed objections and exceptions with the administrative law judge concerning both the interim order and the award of attorney fees to Bridges, Molnar's attorney. Those objections and exceptions asserted that Glassworks had a valid defense to Molnar's complaint, that Molnar's complaint was, in any event, defective on its face, since it did not adequately allege a charge of discrimi-

nation, and further, that a substantial injustice had been done by refusing to allow testimony concerning Glassworks' defense at the December 2, 1983, hearing on damages.

On February 21, 1985, the administrative law judge issued a recommended order and decision which incorporated the language of the interim recommended order and decision concerning the award of damages to Molnar, and the fee award to be paid by Glassworks to Molnar's attorney, Bridges. No objection was filed by Glassworks to this final recommended order and, on April 11, 1985, the HRC entered an order affirming the February 21, 1985, recommended order and decision of the administrative law judge. In its order affirming the recommended order of the administrative law judge, the HRC specifically noted that the recommended order was reasonable on its face and that Glassworks had filed no objections with the HRC. Subsequently, when Glassworks had refused to comply with the order, the HRC also issued an order on July 12, 1985, directing the DHR to file suit in the circuit court to enforce its earlier order of April 11, 1985.

In the interim, however, on May 8, 1985, Glassworks, as stated earlier, filed a complaint for review in the circuit court of Cook County. The original complaint was dismissed for failure to include Djeadj Molnar as a necessary party, and an amended complaint was consequently filed on August 21, 1986, which named Molnar as a party. The amended complaint alleged that the DHR and the HRC violated Glassworks' constitutional rights to a hearing; that the findings in the default order were contrary to law and against the manifest weight of the evidence; and that the penalties imposed were excessive and unsupported by the evidence. Glassworks' complaint further requested that the circuit court reverse "said decision and order," but it is unclear what order Glassworks referred to when it made this request in its complaint.

Defendant Molnar, as stated earlier, also responded to Glassworks' complaint by filing a motion to dismiss, contending that the circuit court was without jurisdiction to hear the appeal, inasmuch as Glassworks failed to file any objections to the final recommended order and decision of the administrative judge. The parties submitted memoranda, and on January 28, 1986, a hearing was held on the defendant's motion to dismiss. At the hearing, the circuit court found that Glassworks had only requested a review of the original April 11, 1985, order, and inquired of Glassworks' attorney, Feldman: "How can you seek to have administrative review over something that you didn't object to in the first place?" Following the hearing, the court found that by failing to object to the final recommended order, Glass-

works had waived all objections and thus concluded that, pursuant to section 3—102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 3—102), the plaintiff's complaint for administrative review was barred. As stated, Glassworks has now appealed that decision to this court.

The issues presented for review are: (1) whether Glassworks was deprived of its due process rights since no hearing was held on the merits of the complaint; (2) whether the procedures set forth in the Human Rights Act are violative of due process; and (3) whether a sufficient jurisdictional basis existed to support the entry of a default on Molnar's charge.

The Human Rights Act provides a system for the resolution of discriminatory employment practices in Illinois and sets forth procedures for investigation and adjudication of charges of discrimination. (See Ill. Rev. Stat. 1985, ch. 68, par. 8—101 *et seq.*) Once the initial charge is filed with the DHR, the DHR conducts an investigation of the charge, including, within its discretion, the scheduling of a fact-finding conference. If the DHR determines that a fact-finding conference is necessary or desirable, a conference must be scheduled within 120 days from the date the charge is filed by the employee. (See Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).) If the DHR issues a notice of default, such as it did in this situation, the defaulted party may request a review of that default from the HRC. (Ill. Rev. Stat. 1985, ch. 68, par. 8—103(A).) If the default is sustained upon review by the HRC, the next step is that the matter must be set for a hearing on damages as it was here. Ill. Rev. Stat. 1985, ch. 68, par. 8—103(C).

Thereafter, following a determination by the hearing officer, if a party is dissatisfied with the results of this determination, it may seek review of that determination by the HRC pursuant to the Human Rights Act. (See Ill. Rev. Stat. 1985, ch. 68, par. 8—102.) The Human Rights Act also sets forth the procedures that must be followed to obtain any further review from a determination by the HRC. The Act provides for judicial review by the circuit court of any final determination by the HRC pursuant to the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). Ill. Rev. Stat. 1985, ch. 68, par. 8—111.

The right to judicial review under section 8—111 of the Human Rights Act is specifically limited by the language of section 3—102 of the Administrative Review Law, which provides that any administrative decision which has "become final because of the failure to file any document in the nature of objections, protests, petition for hearing or application for administrative review within the time allowed [under

the specific Administrative Act] *** shall not be subject to judicial review hereunder, excepting only for the purpose of questioning the jurisdiction of the administrative agency over the person or subject matter." Ill. Rev. Stat. 1985, ch. 110, par. 3—102.

■ The first issue raised by Glassworks is whether its due process rights were violated because there was never a hearing on the merits of Molnar's charge. Glassworks contends its due process rights were violated since it was never afforded a hearing or the opportunity to appear and defend against the merits of Molnar's case. We disagree and find that Glassworks did receive due process. In the case before this court, the DHR issued an order of default against Glassworks for the Harrises' and Feldman's failure to appear, without good cause, at the scheduled fact-finding conference. Glassworks requested the the HRC review the default order. The HRC affirmed the default on August 31, 1983. Thereafter, while Glassworks did file objections to the interim recommended order of the administrative judge, it did not, however, file any objections when the administrative law judge issued his recommended order, which it was expressly required to do under section 8—107(A) of the Human Rights Act to preserve its right to review. Thus, since no objections were filed with the HRC, no issue was preserved for review, and on April 11, 1985, the HRC properly affirmed the recommended order. (See Ill. Rev. Stat. 1985, ch. 68, par. 8—107(E)(3).) Furthermore, Glassworks did not even attempt to file a petition for a rehearing or modification with the HRC. (See Ill. Rev. Stat. 1985, ch. 68, pars. 8—102(E), (G).) Instead, without attempting to preserve the issues here under the statutory procedures, Glassworks filed a complaint in the circuit court of Cook County seeking administrative review of the HRC's ruling. Accordingly, inasmuch as the issues here were not preserved for review by the procedures set forth in the Human Rights Act, the circuit court had no jurisdiction under section 3—102 of the Administrative Review Law to hear any claims raised in Glassworks' complaint. See *Board of Governors of State Colleges & Universities v. Illinois Human Rights Comm'n* (1982), 109 Ill. App. 3d 946, 441 N.E.2d 391.

Additionally, contrary to Glassworks' contentions, we find *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148, to be inapplicable to the present case. In *Logan*, the claimant filed a charge of discrimination, and no hearing was held on the claim because the Commission failed to set a date for the hearing within the 120-day period provided in the Act; the same time restriction as is currently found in the Human Rights Act. Ultimately, the complaint there was dismissed. In that case, the Supreme Court found

the claimant's due process rights were violated by the failure to provide the claimant the opportunity for a hearing. Importantly, the Court there specifically found that the failure to hold a hearing was not the fault of either party, nor was it within the control of either party, but that the failure to hold a hearing within the time required was the fault of the Commission, and entirely within its control. The claim had been discharged solely because the statutorily mandated time requirement had elapsed before the Commission attempted to schedule a meeting. Here, however, Glassworks cannot find support in the decision in *Logan*, since the failure to hold a hearing was not the fault or negligence of the Commission, but the failure to hold a hearing was the fault of Glassworks itself. Furthermore, it was also Glassworks' own negligence or its intentional choice that caused the issues of which it complains of in this appeal not to be preserved for judicial review.

■ The next issue raised by Glassworks is whether the procedures set forth in the Human Rights Act deprived it of its due process rights by authorizing the entry of a default judgment against it when Glassworks failed to appear for the fact-finding conference. We find no merit in this contention either, for procedures similar to those set forth in the Human Rights Act have specifically been found to provide adequate constitutional due process safeguards. (See *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148; *Board of Education v. Eckmann* (1982), 103 Ill. App. 3d 1127, 432 N.E.2d 298.) Termination of a claim or, as here, the entry of a default judgment for failure to comply with reasonable procedural rules, is not violative of due process. (See *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148.) It was Glassworks' own failure to comply with the reasonable procedures of the Act that resulted in the entry of default against it, and, moreover, as stated, Glassworks failed to take advantage of the review procedures provided for in the Human Rights Act to preserve this issue for review now. Thus, Glassworks' failure to abide by the reasonable administrative procedures here resulted in the entry of the default judgment. Accordingly, Glassworks' due process rights were not violated by the failure to hold a formal hearing on the complaint.

■ The final issue raised by Glassworks is whether the HRC had jurisdiction to enter a default judgment against Glassworks on the charge of discrimination filed by Molnar. Glassworks argues that the charge failed to state sufficient facts to support a claim of discrimination and, since no other facts were brought forth during the investigation phase, there was no initial jurisdiction to enter the default judg-

ment. We disagree. Despite Glassworks' failure to cooperate with the investigative process, we believe there was, nevertheless, sufficient evidence in Molnar's charge to support a default judgment entered by the DHR against Glassworks. In any event, to adequately state a claim for discrimination there need only exist some relevant evidence such that a reasonable mind might find it sufficient to support a conclusion that the alleged discriminatory practice had been committed. (See *Consolidated Edison Co. v. NLRB* (1938), 305 U.S. 197, 229, 83 L. Ed. 2d 126, 140, 59 S. Ct. 206, 217; *Chambers v. Illinois Fair Employment Practices Comm'n* (1981), 96 Ill. App. 3d 884, 888, 422 N.E.2d 130, 134. *Cf. Board of Education v. Eckmann* (1982), 103 Ill. App. 3d 1127, 432 N.E.2d 298.) We believe that this test was met here, and, as has already been observed, Glassworks also failed to preserve any right of review of the default order. Accordingly, since there was a sufficient jurisdictional basis for the charge, the DHR had jurisdiction to enter the default order, and the HRC properly affirmed the order.

For all the foregoing reasons, we find that Glassworks' complaint for administrative review was properly dismissed, and accordingly, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and MANNING, JJ., concur.