VANDOLA CHAMBERS, Plaintiff-Appellant, *v.* ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-594

Opinion filed May 26, 1981.

Mark J. Heyrman and William F. Ryan, both of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Edward M. Kay, Assistant Attorney General, of counsel), for appellee Fair Employment Practices Commission.

Montgomery & Holland, of Chicago, for appellee Ford Motor Company.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Vandola Chambers filed an administrative review action (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) seeking review of an order of the Illinois Fair Employment Practices Commission (hereinafter Commission) dismissing his unfair employment practice charge filed against defendant Ford Motor Company (hereinafter Company). Plaintiff contended that the Company committed an unfair employment practice under section 3(a) of the Fair Employment Practice Act (Ill. Rev. Stat. 1975, ch. 48, par. 853(a)). The court affirmed the Commission's order, and plaintiff appealed, contending that the Commission abused its discretion by dismissing the plaintiff's charge where it was supported by substantial evidence.

For the reasons stated hereinafter, we reverse and remand.

The record reveals that plaintiff filed an unfair employment practice charge with the Commission on September 13, 1978, charging that the Company discriminated against him by placing him on a medical leave of absence on the basis of a perceived mental handicap in that the alleged condition did not constitute a mental handicap and had no affect on his ability to perform his assigned work duties. According to plaintiff's charge, several physicians diagnosed his condition and approved his return to work. Although plaintiff had been told by the Company's labor relations representative that he could return to work if he could present a physician's diagnosis of his condition, the Company refused to return the plaintiff to work unless he sought psychiatric treatment.

An investigation of plaintiff's charge was held pursuant to the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 858.) The focus of the investigation was to determine whether there was substantial evidence supporting the plaintiff's charge. The investigation revealed that plaintiff was hired by the Company on January 21, 1970. On November 16, 1976, he was placed on medical leave of absence at which time the Company's physician recommended that plaintiff see a psychiatrist. It was the Company's position during the investigation that plaintiff was not handicapped but that he did suffer from a temporary disability and that, although he was capable of performing his work, he needed to receive psychiatric treatment.

According to the investigatory report, plaintiff exhibited unusual behavior at work which included carrying derogatory signs throughout the work area, leaving his work area to stare at other employees while they worked, and his refusal to be relieved for his breaks. There was no indication in this report, however, whether this unusual behavior prevented plaintiff from performing his work duties. The report also cites an

incident involving plaintiff and a co-worker which occurred on April 24, 1975. The event, according to a statement supplied to the investigator, apparently was occasioned by plaintiff taunting the co-worker by waving a white rag at him and carrying a sign which contained derogatory comments about the co-worker on it. At this point the co-worker grabbed plaintiff around the neck and shoulders and plaintiff became angry and threw shock absorbers at the co-worker and then chased him down the assembly line.

In plaintiff's request for reconsideration filed with the Commission after the dismissal of his charge, plaintiff contended that this altercation was precipitated by the co-worker and that both men were sent home following the incident. Plaintiff was then placed on medical leave until September 1975. After returning from this medical leave, plaintiff worked without incident until November 16, 1976, when he was again placed on medical leave.

According to both the investigation report and the motion to reconsider, plaintiff saw a number of doctors after the Company placed him on the second medical leave. Plaintiff was evaluated by Dr. Douglas L. Foster, a psychiatrist, on several occasions in December 1976 and January 1977. Dr. Foster's early letters and reports indicate that plaintiff suffered from a form of paranoia which made it difficult for him to assess reality and that he was not able to return to work. In a letter dated December 20, 1976, Dr. Foster acknowledged that plaintiff did not believe his diagnosis and was not amenable to treatment. He also wrote:

> "It is very difficult to determine if the extent of his illness is such that it currently interferes severely with his work * * * [and] the more appropriate way of handling the situation would be to make the referral to two other psychiatrists so as to get independent judgments * * *."

In a letter to the Company dated January 24, 1977, Foster reported that plaintiff could return to work. In a subsequent letter to plaintiff on February 23, 1977, however, Foster stressed his belief that plaintiff had a psychiatric condition and needed treatment. Dr. Foster also noted that he had conditioned plaintiff's return to work on certain terms. Plaintiff also saw Dr. R. R. Edrosa on January 4, 1977, who indicated that plaintiff could return to work in that he evidenced no abnormalities.

In April of 1978 the Company's physician directed a letter to Dr. Ellis D. Johnson, a psychiatrist, informing him of the Company's belief that plaintiff had a psychiatric problem. Dr. Johnson was specifically asked if he would determine if "it is safe for him to return to work" and whether "you feel he would in any way be a danger to others working around him?" Pursuant to this request, Dr. Johnson examined plaintiff and

diagnosed him as a paranoid personality. In his formal recommendation to the Company, he stated:

> "I recommend that Mr. Chambers be permitted to return to his employment. He does not appear to be a danger to his peers or supervisors. If he is unable to perform his duties satisfactorily, I recommend that he be referred to personnel for administrative decisions * * *."

Plaintiff also saw Dr. James M. Allison, Jr., on March 8, 1977, who concluded that plaintiff "shows no evidence of mental or physical disability." The record, however, is contradictory as to whether Dr. Allison is a psychiatrist or a surgeon.

The investigatory report recommended that plaintiff's charge should be dismissed. The report did concede, however, that "there appears to be no agreement as to whether complainant is able to safely return to work." The Commission adopted the investigatory report's recommendation and subsequently denied the request for reconsideration. The Commission's findings suggested it placed major reliance upon Drs. Foster's and Johnson's reports, while placing little, if any, reliance upon the reports of Drs. Allison and Edrosa because they were not psychiatrists. The Commission also noted that Dr. V. V. Urba had examined and diagnosed the plaintiff and had recommended testing and treatment. The Commission noted that the request for reconsideration had not mentioned Dr. Urba.

The Fair Employment Practices Act[1] was enacted to eliminate discrimination suffered by persons based on

> "* * * race, color, religion, sex, national origin, ancestry, physical or mental handicap unrelated to ability, or unfavorable discharge from military service, with consequent failure to utilize the productive capacities of individuals to the fullest extent deprives a portion of the population of the State of earnings necessary to maintain a reasonable standard of living, thereby tending to cause resort to public charity and may cause conflicts and controversies resulting in grave injury to the public safety, health and welfare."

(Ill. Rev. Stat. 1977, ch. 48, par. 851.)

It is an unfair employment practice:

> "For any employer, because of the race, color, religion, sex, national origin, ancestry or physical or mental handicap unrelated to ability of an individual, or an unfavorable discharge from military service, to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection

---

[1] This Act has been superseded by the Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par 1—101 et seq.), which provides comprehensive coverage for discrimination in employment, housing, lending and public accommodations.

and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment." (Ill. Rev. Stat. 1977, ch. 48, par. 853(a).)

The Act also provided for the creation of the Commission to enforce its provisions and for certain specified procedures to be followed after a charge has been filed. For our purposes, it is necessary only to discuss the investigatory mechanism established by the Act. Section 8 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 858) provides that a fact finding conference shall be convened after the proper filing of a charge for investigation purposes. During this period an investigator ascertains the facts relating to the alleged unfair employment practice. The Act further provides that "[i]f it is determined by the Commission, after such investigation, that *there is not substantial evidence* that the alleged unfair employment practice has been committed, the charge shall be dismissed." (Emphasis added.) A complainant has no constitutional right to a hearing or to otherwise participate at this stage of the proceedings. (*Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370.) Moreover, it is within the Commission's discretion whether to dismiss a charge for lack of substantial evidence and, therefore, the circuit court on administrative review may only consider whether the order of the Commission is "arbitrary, capricious, or an abuse of discretion." (*Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370.) Substantial evidence exists to dismiss a charge where more than a mere scintilla of relevant evidence exists such that a reasonable mind might find it sufficient to support a conclusion. (*Consolidated Edison Co. v. N.L.R.B.* (1938), 305 U.S. 197, 83 L. Ed. 126, 59 S. Ct. 206; *In re Hawkins* (1971), 1 Ill. F.E.P. Rep. 6.) According to the court in *Klein*, this standard is deliberately vague to permit the Commission discretion in ascertaining and evaluating facts in the investigation process.

Initially we note that the record on review does not include exact copies of all the reports upon which the investigatory report and the Commission's findings are based. Neither party has raised an objection as to any of these omissions. Moreover, as the trial court based its decision in the administrative review action on this record, we will do the same.

The Commission's findings upon dismissing plaintiff's charge indicate that plaintiff suffered from a mental condition and that it was because of this condition that the Company determined that plaintiff should not be reemployed until he sought treatment. The Commission made no specific finding as to whether plaintiff's condition affected his ability to work. In analyzing whether the Commission acted properly in dismissing plaintiff's charge at the investigatory stage, we turn first to consider whether the Company acted on the basis of a real or perceived mental condition. From our review of the record, we believe that there

were sufficient facts gathered in the investigation to conclude that plaintiff suffered from a mental condition. According to the psychiatric examinations of Drs. Foster and Johnson, plaintiff suffered from a mental condition diagnosed as paranoia. While Drs. Edrosa's and Allison's reports contradict these findings, the record fails to establish that these doctors were trained to make a psychiatric evaluation of plaintiff. We decline to comment on Dr. Urba's examination of plaintiff in that his examination occurred subsequent to plaintiff's first medical leave and was therefore too distant in time to have relevance as to plaintiff's condition at the time following his second medical leave of absence.

Once it is established that plaintiff did suffer from a mental condition, the pivotal question was whether plaintiff's mental condition was a mental handicap unrelated to his ability to work such that the Company's imposition of a special condition on his employment constituted a discriminatory practice under section 3(a) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 853(a)). The Company argues that the psychiatric testimony reveals that plaintiff is mentally handicapped as defined by the Guidelines on Discrimination in Employment under the Fair Employment Practices Act prepared by the Commission and that the handicap disrupts the essential functions of his job. Under those guidelines a person is mentally handicapped if he has any mental impairment "which constitutes or is regarded as constituting a substantial limitation to one or more of a person's major life activities." Life activities include communication, self-care, socialization, education, vocational training, employment, transportation and housing. The Company's contention on appeal is inconsistent with its position during the investigatory stage that plaintiff was able to perform his job and that he only suffered from a temporary disability. It would also appear inconsistent with the fact that the Company has conditioned plaintiff's return to work upon his beginning treatment without specifying that any progress has to occur prior to the resumption of his work duties.

It is the Commission's position, as articulated in its memorandum in opposition to plaintiff's complaint for administrative review, that once it is determined that an individual has a mental condition, it follows that this condition affects the individual's ability to perform assigned work duties. As the Commission noted:

"Plaintiff's argument that there was no connection between his condition and his job effectiveness is thus patently absurd. *Anytime an employee's mental processes are placed in issue, there must be an effect on his job performance and his ability to get along* with his fellow employees." (Emphasis added.)

The Commission's position and its failure to specifically address in its findings the issue of the effect of plaintiff's mental condition on his ability

to work is inconsistent with the statutory language of the Fair Employment Practices Act as well as with its stated policy as set forth herein. To presume that an individual with a mental condition or a mental handicap, as defined above, of necessity is unable to perform his work duties eliminates the very protection upon which this statute is based.

Nor is the Commission's position supported by the record in the instant case. Dr. Foster's report of December 20, 1976, indicates that at the time the doctor could not decide whether plaintiff's condition interfered with his work. However, he later approved plaintiff's return to work. Dr. Johnson's report of May 24, 1978, returning plaintiff to work, specifically noted that plaintiff "does not appear to be a danger to his peers or supervisors." Accordingly, the psychiatric reports do not indicate that plaintiff was unable to perform his work duties based on his mental condition and, at most, are divided on this issue. Moreover, plaintiff's work record also supports the conclusion that he is able to perform his work duties. He worked for the Company for five years without a major incident and then for 14 additional months after the April 24, 1975, incident. Based on the foregoing principles and upon our examination of the record, we believe there was substantial evidence of a discriminatory practice such that the Commission's dismissal of plaintiff's charge was arbitrary, capricious and an abuse of discretion.

In so concluding, we are mindful of the Act's intent to protect employers against unfounded charges of discrimination (Ill. Rev. Stat. 1977, ch. 48, par. 851) and of the Company's legitimate concerns for the safety of its employees when faced with an employee with mental problems. However, as there was substantial evidence to support plaintiff's charge, it was improper, under the Act, to dismiss plaintiff's charge. Accordingly, we reverse and remand this cause to the Commission for further proceedings consistent with this opinion.

For these reasons, we reverse the judgment of the circuit court and we remand the cause to the Commission for further proceedings consistent with this opinion.

Reversed and remanded.

McGLOON and GOLDBERG, JJ., concur.