Stewart LEMON and William Ward, etc., Plaintiffs,

v.

Joyce E. TUCKER, etc., et al., Defendants.

No. 84 C 4021.

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1985.

On Motion for Reconsideration Nov. 18, 1985.

Gary H. Palm, Chris Gair, Senior Law Student, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs.

Jeffrey Finke, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiffs Stewart Lemon and William Ward sue on their own behalf and on behalf of a class of individuals similarly situated, charging that certain provisions of the Illinois Human Rights Act ("IHRA"), Ill.Rev.Stat. ch. 68, ¶¶ 1–101 to 9–102 (1983), are unconstitutional. Defendant Joyce Tucker, Director of the Illinois Department of Human Rights ("Department") moves to dismiss this action for failure to state a claim upon which relief can be granted. In an earlier motion to dismiss this action on other grounds, the then co-defendant Department was dismissed on the ground of sovereign immunity. *See* Memorandum Opinion and Order from this court dated November 19, 1984. For the reasons stated below, the motion to dismiss for failure to state a claim is denied in part and granted in part.

The IHRA creates a state cause of action for various "civil rights violations" amounting to discrimination based on race, sex, handicap, religion, age, unfavorable military discharge, marital status, and other factors. Ill.Rev.Stat. ch. 68, ¶ 1–103(Q). Plaintiffs claim that the procedures used to determine the validity of discrimination violate plaintiffs' fourteenth amendment due process and equal protection rights.

Under the IHRA, a person who believes that she or he is the victim of a civil rights violation may file a charge with the Department within 180 days of the alleged violation. ¶ 7–102(A)(1). When filing a charge, the complainant must state with particularity the time, place, event and other facts concerning the occurrence of the alleged discrimination. ¶ 7–102(A)(2). Once a charge has been filed, the Department is then required to serve the responding party and commence a "full investigation" of the allegations set forth in the charge. ¶ 7– 102(B)–(C). During this investigation, the Department has the authority, but not the duty, to compel the production of documents and the testimony of witnesses. ¶ 7–102(C)(2). The Department also has the discretion to convene a fact-finding conference. ¶ 7–102(C)(3). Upon conclusion of the investigation, the Department must prepare a report which the director of the Department reviews to determine whether there is substantial evidence that a civil rights violation has occurred. ¶ 7– 102(D)(1)–(2). If such evidence is determined to exist, the director must appoint a Department attorney to endeavor to eliminate the effect of the alleged violation through "conciliation." ¶ 7–102(D)(2)(b). If conciliation efforts fail, the Department must file a formal complaint with the Illinois Human Rights Commission ("Commission"), ¶ 7–102(F), and a full adversarial hearing on the merits of the complaint follows. ¶ 8–106. Upon a finding of a civil rights violation, the Commission is authorized to provide a broad panoply of remedies, including actual damages, cease and desist orders, reinstatement, and attorneys' fees. ¶ 8–108.

If the director determines, after the original investigation, that there is no substantial evidence to support the charge of a civil rights violation, the charge is dismissed. ¶ 7–102(D)(2)(a). The complainant may, however, seek review of the dismissal by the Commission. *Id.* When reviewing a dismissal, the Commission may, but is not required to, consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request for review. ¶ 8–103(B). Also, in its discretion, the Commission may designate a hearing officer to conduct a hearing into the "factual basis of the matter at issue." *Id.* Finally, if the Commission upholds the Department's dismissal, the complainant may seek judicial review. ¶ 8–111(A)(1). The court must uphold the Commission's order unless it is "contrary to the manifest weight of the evidence" in the record.

¶ 8–111(A)(2). The court does not make a de novo determination of whether substantial evidence itself exists.

Hence, the victim of a civil rights violation has the right to file a charge with a state agency, assert facts that make out a case for discrimination, and have that charge, if supported by substantial evidence, pursued through conciliation and, if necessary, formal hearing and administrative relief. However, the complainant does not have the right to require the Department, when investigating a charge for substantial evidence, to exercise its compulsory process or fact-finding powers, or even, it would appear, to listen to the complainant's proffered reasons for why substantial evidence exists. Similarly, the complainant does not have the right to require the Commission, on review of a finding of no substantial evidence, to hold a fact-finding hearing on the charge, or even to consider the Department's report, the complainant's arguments, or additional evidence or investigative results. Finally, there is no de novo judicial review of the evidence in the record. In short, a complainant has the right to file and describe a civil rights charge and have the IHRA machinery arbitrate and if necessary adjudicate the charge if it is supported by substantial evidence. But the complainant has no right to have the Department or Commission consider any evidence or reasons she or he offers to support a finding of substantial evidence. And though the reviewing court is presumably required to consider any evidence entered into the record, the court does not review the record to determine if there is substantial evidence. Rather, the court is permitted to review the record only to determine if the finding of no substantial evidence is contrary to the manifest weight of the evidence.

Plaintiffs' primary constitutional argument is that the procedures used to determine whether the Department and Commission will pursue a charge of a civil rights violation through conciliation and adjudication violate due process. Plaintiffs argue that the right to use the IHRA administrative and adjudicatory machinery is a property right; as a property right, it may not be terminated without due process of law. Plaintiffs do not dispute the constitutional validity of the substantive standard for terminating one's IHRA rights—i.e., the lack of substantial evidence. Instead, plaintiffs contend that the procedures for determining the existence of substantial evidence fall below the minimum required by due process.

### The Due Process Claim

It is a familiar precept of constitutional law that a state may not deprive a person of property without due process of law. In order for plaintiffs to prevail in their claim that the procedures of the IHRA deprive them of property without due process, they must establish that the IHRA gives them something cognizable as property, and that the procedure which deprives them of that property is not due process.

The United States Supreme Court, in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), held that a claim under the Illinois Fair Employment Practices Act ("FEPA")—the predecessor to the IHRA and the substantive rights of which are now incorporated in IHRA—is a property right. The court observed that "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" 455 U.S. at 431, 102 S.Ct. at 1155. A claim under FEPA, and now under IHRA, cannot be dismissed by the Department unless there is no substantial evidence to support it. This, the Court held, is in essence a "for cause" standard. *Id.* Thus, since both FEPA and IHRA give a victim of discrimination the right to use administrative and adjudicative procedures absent a lack of substantial evidence to support the charge, both acts give Illinois residents a property right in her or his charge of discrimination. *See id.*

Once it has been determined, as it has, that plaintiffs possess a property right, the inquiry shifts to "what process is due" the possessor of that right. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593,

2600, 33 L.Ed.2d 484 (1972). The starting point for this inquiry is the constitutional benchmark that a deprivation of property must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). Here, because there is obviously no question that the plaintiffs have notice of their own charges, the question becomes whether the IHRA procedures for determining the substantiality of evidence (Department investigation, Commission review, and judicial review) provide plaintiffs with the process that is their due before their charges are dismissed with finality.

The governing approach for determining what process is due was laid down by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The nature of the hearing required prior to the termination of the property right "will depend on the appropriate accommodation of the competing interests involved." *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975):

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). See also *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (random termination of property interest in using adjudicatory procedures violated procedural due process); *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (informal procedures before a foster child

may be removed from foster home satisfies due process, assuming a liberty interest was involved); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (before municipal utility may cut off services to customer, it must afford customer opportunity to meet with an employee authorized to settle billing disputes).

■ A careful balancing of these interests leads this court to conclude that the minimal nature of procedures guaranteed to complainants for investigating charges for substantial evidence and review of dismissals under the IHRA is sufficiently offensive to due process to survive defendant's motion to dismiss. First, the interests of the victim of a civil rights violation are substantial. They are based on the victim's interest in the "property rights" provided by the IHRA—conciliation efforts, followed if necessary by adjudication and relief—rights which remain vested after the filing of a charge unless there is a determination of no substantial evidence. The rights of conciliation and hearing both offer the complainant substantial possibilities that the victim's discrimination will be redressed with damages, reinstatement, or some other form of relief.

The interests of the government are also important. The government is interested in the expeditious dismissal of nonmeritorious claims not only so as to reduce its own administrative costs but also to reduce the burden on innocent respondents. An administrative investigation which can quickly clear a respondent of an unmeritorious charge will well serve that respondent's, and therefore the government's, interests. The government is also interested in expeditious dismissals of non-meritorious claims so as to assure that meritorious claims are attentively and purposefully processed thereby vindicating one of the purposes of the IHRA.

Because the individual's and government's interests are both significant, the critical factor here in applying the *Eldridge* formula is the likelihood that, under exist-

ing procedures for investigating a charge of a violation, one's right to the IHRA machinery (conciliation, hearing and relief) will be erroneously terminated, and the possibility that additional procedures will enhance accuracy. The substantive standard for terminating the property right is the lack of substantial evidence. The question, therefore, is whether the procedures for investigating for substantial evidence pose an unreasonably high risk of error.

It has already been observed that the IHRA investigative procedures do not, as written, guarantee a complainant normal adjudicative rights. Although the Department has the power to use compulsory process, compel production of documents and employ a fact-finding conference, it need not do so. Ill.Rev.Stat. ch. 68, ¶ 7-102(C)(2), Illinois Department of Human Rights (IDHR) Rules and Regulations 4.3 (1983). The Department has plenary control over the evidence it will receive and so the complainant has no right to present her or his case to the Department. *Id.*

When a complainant requests Commission review of a dismissal, she or he does not have the right to require the Commission to review the Department's report, to consider additional evidence, arguments or investigation, or hold a hearing. ¶ 8-103(B). These powers are all within the discretion of the Commission. On judicial review of a Commission's order upholding dismissal, there is no de novo review. The court does not undertake to determine if the record contains substantial evidence, but only to determine if a finding of no substantial evidence is contrary to the manifest weight of the evidence in the record. Thus, even if a complainant on Commission review has put substantial evidence in the record, the Commission in its discretion may refuse to consider it, ordering dismissal instead. The reviewing court is powerless to reverse the Commission's dismissal if the dismissal is not contrary to the manifest weight of the evidence in the record.

In sum, although the Department and Commission may provide complainants with trial-type rights to determine whether sub-stantial evidence exists, they need not. The only right of input in the process of determining whether substantial evidence exists that a complainant is guaranteed occurs at the time a charge is filed. At that point the complainant may assert facts concerning the allegedly discriminatory incident. But this does not necessarily include the critical right to present reasons why there exists substantial evidence to support these facts. Therefore, it is conceivable, if the Department and Commission streamline their procedures to the statutory minimum, that a complainant will find her or his charge dismissed for lack of substantial evidence without ever having been afforded an opportunity to call to the Department's, Commission's, or a court's attention reasons why such evidence exists.

If such streamlining of procedures is the actual practice of the Department and Commission, then the IHRA falls short of the minimum procedural rights required by due process. "The opportunity to present reasons, either in person or in writing, why proposed action [dismissal of a charge] should not be taken is a fundamental due process requirement." *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). In completing the *Eldridge* analysis here, this court concludes that the fundamental due process requirement of an opportunity to present reasons applies here as well. First, if complainants are assured some opportunity to present reasons why their charges are supported by substantial evidence, the accuracy of decisions will significantly improve. For example, if complainants were given the right to indicate to the Department, and have the Department consider, the availability of witnesses and their anticipated testimony, documents, or other reasons why substantial evidence exists, the Department's ability to accurately assess the merits of a charge would be substantially enhanced. Second, it is certainly conceivable that plaintiff can show that the burden the government would face in allowing the mere presentment of reasons is hardly the sort of imposition that would force the investigative process to come to a

grinding halt, or indeed even noticeably slow it down.

On a motion to dismiss for failure to state a claim, the court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Carl Sandburg Village Condominium Association v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). The question here is the adequacy of the IHRA investigative procedures. Under a literal reading of the relevant statutory and regulatory provisions, at no time during investigative proceedings is a complainant assured the right to present reasons against dismissal. It is therefore conceivable that plaintiffs will be able to prove that this procedural inadequacy is not only permitted by statute, but actually implemented by Department and Commission practice. It is also conceivable that plaintiffs will be able to show that the burden on the government of allowing complainants to present reasons is insubstantial. Because of the conceivability of this set of facts, the proof of which would establish a due process violation under *Eldridge*, the defendant's motion must be denied. Of course, if defendant can show that the IHRA has been interpreted and implemented so as to afford each complainant with this fundamental procedural protection, then due process has not been violated. For example, defendant may be able to show that when complainants file charges, the Department considers itself obligated to ask complainants to supply the Department with any reasons why the complainants believe there is substantial evidence to support the charges. Alternatively, if defendant can show that the burden of allowing complainants to present reasons is substantial, *Eldridge* may no longer require this court to guarantee the process of presentment of reasons. Finally, defendant may be able to show that the Commission, on review of a Department dismissal, considers itself obligated to perform a de novo review of all the evidence avail-able, including all the evidence and arguments timely submitted by complainants pursuant to ¶ 8–103(B).

Defendant contends that a contrary result is required by several intermediate state decisions such as *Board of Education v. Eckmann*, 103 Ill.App.3d 1127, 59 Ill.Dec. 714, 432 N.E.2d 298 (2nd Dist.), *petition for leave to appeal denied*, 91 Ill.2d 567 (1982), *Chambers v. Illinois Fair Employment Practices Commission*, 96 Ill.App.3d 884, 52 Ill.Dec. 449, 422 N.E.2d 130 (1st Dist.1981) and *Klein v. Fair Employment Practices Commission*, 31 Ill. App.3d 473, 334 N.E.2d 370 (1st Dist.1975). These cases, defendant argues, hold that a complainant has no due process rights in an investigatory, as opposed to adjudicatory, proceeding. Thus a complainant under IHRA has no due process rights in the investigation conducted by the Department in response to a charge of a civil rights violation.

Defendant has read the holdings in these cases far too broadly. All three cases just cited are the progeny of *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). In *Hannah*, the Supreme Court held that a person whose conduct is under investigation by a government agency—i.e., an IHRA *respondent* —is not entitled to the full panoply of due process protections, such as knowledge of identity of complainant, cross-examination, and other procedures that normally accompany adjudication. 363 U.S. at 441–42, 80 S.Ct. at 1514. In arriving at this holding, the Court balanced the burden that would befall the investigative process if trial-type rights were given to persons under investigation against the benefits that those persons would realize from such rights. Thus *Hannah* is entirely different from the case at bar. *Hannah* balanced a *respondent's* need for procedural trappings against the government's need for efficient and undisrupted investigations. Here, the Court must balance against administrative expediency a complainant's need to apprise an agency of relevant information. Under IHRA, all respondents who are the subject

of an unfavorable investigative report are guaranteed a full trial-type hearing before actual liability attaches. Consequently, the respondent's need for trial-type protections at the investigative stage is minimal, if not nonexistent. By contrast, a complainant is never guaranteed an opportunity to present her or his case to the Department on investigation or have it considered by the Commission on review of a dismissal. Thus, the complainant's need for some sort of input at either the investigative or review stage is much greater than that of the *Hannah* respondent. Because defendants have not argued that the imposition on the government in allowing a complainant to present reasons against dismissal is greater at the investigation stage than at the review stage, this court holds the right to present reasons and have them heard should be provided at the investigative stage.

The facts in *Eckmann* are similar to *Hannah* in that respondents', not complainants', rights were at issue and therefore *Eckmann* can be distinguished from this case for the same reason that *Hannah* was. The defendant's reliance on *Chambers* is also misplaced. *Chambers* did not involve a constitutional challenge to administrative procedures. The one statement of constitutional law appearing in that opinion is therefore dictum. Only the *Klein* case, cited by defendants, involved a complainant—as opposed to a respondent—who constitutionally challenged the absence of extensive due process procedures available during an administrative investigation. The challenge was unsuccessful in *Klein,* but that result is of little relevance here. Aside from the fact that *Klein* was decided seven years before the *Logan* court's holding that an IHRA charge is a property right protected by due process, the court in *Klein* held only that the complainant was not entitled to a full hearing during an investigation. This court does not go as far as *Klein* refused to go, but merely holds that an investigative procedure may be constitutionally defective if the investigative tribunal, as part of its procedure for determining whether substantial evidence

exists, does not guarantee complainants an opportunity to present to that tribunal, and require that tribunal to consider, reasons why such substantial evidence exists. In order for plaintiffs to survive defendant's motion to dismiss it is not necessary for this court to hold that more process is required. Therefore, at this time the court intimates no view on whether more process is in fact required.

### The Equal Protection Claim

Plaintiffs also argue that the IHRA violates the equal protection clause. The court can more easily dispose of this claim. Essentially, plaintiffs contend that IHRA violates their equal protection rights because they, as IHRA complainants, are not guaranteed a full hearing on their claims prior to dismissal, while all other plaintiffs, under either a common law, statutory, or administrative causes of action, are guaranteed a hearing upon the filing of a complaint before their complaints are dismissed. Thus, IHRA plaintiffs do not necessarily receive hearings while non-IHRA plaintiffs necessarily do.

The essential feature to any equal protection violation is that one class is burdened relative to another class on the basis of a distinguishing characteristic that is constitutionally irrelevant. Whether a characteristic that distinguishes one class from another is irrelevant depends, in part, on how closely a court must scrutinize the justification for the distinction. In some cases, distinguishing characteristics are irrelevant and therefore impermissible if they are not rationally related to a legitimate state interest; other cases require that the classifications be necessary to a compelling state interest in order to be constitutionally relevant. *See generally,* L. Tribe, American Constitutional Law, §§ 16–2, 16–6 (1978). Thus, this court's inquiry begins with identifying the appropriate level of scrutiny for examining whether the distinction between IHRA plaintiffs and non-IHRA plaintiffs is constitutionally irrelevant.

Plaintiffs suggest that *Hunter v. Ericksen,* 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1965) compels this court to apply strict scrutiny. Plaintiffs' reliance on *Hunter* is misplaced. In *Hunter,* a city charter amendment reduced the rights of racial minorities by burdening their access to the political process. There, in order for racial minorities to enjoy anti-discrimination housing regulations, it was not enough that they got the city council to pass such measures, as would be the case for any other sort of municipal legislation. The minorities also had to get a majority of city voters to approve the legislation by referendum.

■ Here, by contrast, the state action of the IHRA is not reducing rights enjoyed by minorities, be they characterized as adjudicative or political. Indeed, the IHRA gives minorities a new legal cause of action that supplements, and is in addition to, all of the other state recognized legal claims that have always been equally available to both minorities and nonminorities. Simply put, the IHRA is an additional state benefit for minorities. True, it may not be as much of a benefit as some might like. It does not guarantee complainants a hearing. But the IHRA does not in any way burden any rights. If anything, it enhances adjudicative rights. Thus, *Hunter* cannot be used to suggest that strict scrutiny should be applied here.

The assertion that the IHRA has not reduced the bundle of state rights discriminatees have previously enjoyed, and in fact has enhanced that bundle, is amply demonstrated by Illinois state law. For example, in the employment context, the longstanding Illinois rule has always been that a discharged employee had no civil cause of action against the employer for the summary termination of a job in an "at will" employment contract. *Roemer v. Zurich Insurance Co.,* 25 Ill.App.3d 606, 323 N.E.2d 582 (1st Dist.1975). While surveying the Illinois law in *Carrillo v. Illinois Bell Telephone Co.,* 538 F.Supp. 793 (N.D. Ill.1982), this court observed that

[t]he one recognized exception [to the absence of a cause of action for summary discharge] is the relatively new tort of retaliatory discharge, which was judicially created in 1978. The Illinois Supreme Court, however, has thus far only applied this tort in two situations, where the discharge stems from an employee's filing of a workman's compensation claim, *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); and where the discharge is for cooperating with a local law enforcement agency's prosecution of another employee, *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

538 F.Supp. at 799. The court concluded its opinion in *Carrillo* by expressing strong doubts that *Palmateer* could be read to apply the tort of retaliatory discharge to allegedly discriminatory discharges. 538 F.Supp. at 799. Those doubts were just recently vindicated by the Illinois Supreme Court in *Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985), where the court rejected the plaintiff's argument that the tort of retaliatory discharge included a civil cause of action for age discrimination. The court observed that "the legislature intended the [IHRA], with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations." 109 Ill.2d at 7, 92 Ill.Dec. 501, 485 N.E.2d 312. The court also observed that a proposed but rejected amendment to the bill that became the IHRA in 1979 would have created a civil cause of action in addition to or in lieu of the administrative remedies of the IHRA. *Id.* Thus, the tort of retaliatory discharge has not and still does not include a civil cause of action for discrimination. *Accord Manuel v. International Harvester Co.,* 502 F.Supp. 45 (N.D.Ill.1980) (no civil cause of action for discharge based on race discrimination under the tort of breach of the duty of good faith and fair dealing in an employment contract). The IHRA, therefore, now provides discriminatees with

more legal rights than they had prior to the enactment of that Act and certainly no less.

Although not argued by plaintiffs, one further issue of sufficient importance to warrant discussion is whether the IHRA has in some way reduced the federal rights that discriminatees would otherwise enjoy in the absence of the IHRA. It is clear that in the absence of any state statute respecting human rights, Title VII guarantees Title VII plaintiffs a full de novo hearing in federal court on their claims. *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). An unsuccessful IHRA complainant whose charge is dismissed without a hearing, may find, upon becoming a Title VII plaintiff on the same charge, that her or his de novo hearing rights have been negatively influenced by the state dismissal. This is a legitimate concern since the existence of the IHRA means that Title VII charges of discrimination must initially be deferred to that Act's state agency. 42 U.S.C. § 2000e–5(c).

Upon close scrutiny, the court is satisfied that the effect of an IHRA dismissal on a Title VII court hearing is either negligible or nonexistent and concludes that the IHRA does not impinge on subsequent Title VII rights. The court reaches this conclusion by first examining whether an IHRA dismissal without a hearing has any issue or claim preclusion effect on a Title VII federal court hearing. The answer, quite clearly, is that the state agency dismissal has no such preclusive effects. "Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a state's own courts." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 470 & n. 7, 102 S.Ct. 1883, 1891 & n. 7, 72 L.Ed.2d 262. *Kremer* does hold, however, that a court-reviewed state agency determination has a preclusive effect on a federal court action. 456 U.S. at 485, 102 S.Ct. at 1899. However, the state agency involved in *Kremer,* unlike the Illinois Human Rights Commis-

sion and Department of Human Rights, did provide for hearing-type rights at the administrative stage, 456 U.S. at 483, 102 S.Ct. at 1898, and the Court found this fact to be highly relevant to its holding. *See* 456 U.S. at 481–82, 102 S.Ct. at 1897–98. Furthermore, and this is critical, unsuccessful IHRA complainants can always assure themselves of their full, totally unprecluded Title VII hearing rights by declining to seek state judicial review of agency decisions. 456 U.S. at 504, 102 S.Ct. at 1909 (Blackmun, J., dissenting). Unlike initial resort to state administrative remedies, state judicial review of state agency decisions is not a prerequisite to the exercise of Title VII hearing rights. *See* 42 U.S.C. § 2000e–5(c). Thus, the IHRA does not reduce one's Title VII hearing rights in federal court; the state complainant can avail himself or herself of the state agency proceeding and then later receive a full, undiminished hearing in federal court, a hearing identical to what would have been received in the absence of the IHRA.

The absence of a preclusive effect from state agency proceedings does not address the court's second concern—the evidentiary effect of a state agency dismissal without a hearing on one's Title VII rights. A state agency's determination is, by statute, entitled to "substantial weight" during an Equal Employment Commission (EEOC) investigation of a discrimination charge. 42 U.S.C. § 2000e–5(b). Furthermore, the findings of the EEOC, and presumably the state agency's decision, are admissible in the ultimate federal court hearing. *Heard v. Mueller Co.,* 464 F.2d 190 (6th Cir.1972); *Tuma v. American Can Co.,* 367 F.Supp. 1178 (D.N.J.1973); *Gillin v. Federal Paper Board Co.,* 52 F.R.D. 383 (D.Conn.1970). However, the admissibility of an agency's determination of a discrimination charge

is based upon a federal business records statute that allows admission of such evidence so long as it meets the tests of need, reliability, and trustworthiness. Thus, where an EEOC decision is not truly necessary or relevant to the litigation and is prejudicial to an adverse

party, its admission may be prohibited [footnote omitted].

A. Larson & L. Larson, Employment Discrimination § 49.87 at p. 9B–213 (1985). Thus, an IHRA dismissal which can be shown to be based on excessively streamlined and questionable procedures, such as may indeed be the case with the IHRA, will either be excluded from evidence entirely, or if not excluded, accorded extremely minor weight by the federal judge. In view of this minor, if not nonexistent, role that an adverse IHRA proceeding will play in a federal court action, the court finds that any IHRA dismissal has a negligible negative evidentiary impact on a federal hearing. The court is therefore confident of its conclusion that the IHRA does not burden the rights of discriminatees relative to what their rights would be in the absence of an IHRA. If anything, the IHRA gives IHRA plaintiffs something more and nothing less than they would have without the Act.

Plaintiffs raise one final argument in support of their claim that the IHRA legislation warrants strict scrutiny. Specifically, they argue that IHRA plaintiffs are primarily members of racial minorities and so the IHRA classification is a racial one and subject to strict scrutiny. *See, e.g., Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1962); *Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). The court rejects this contention. It is simply inaccurate to characterize the IHRA as having an exclusive or even primary impact on racial minorities. The IHRA prohibits not only racial discrimination but discrimination based on sex, age, handicap, religion, unfavorable military discharge, marital status and others. Never has the Supreme Court held that all, or even most of the classes named here are suspect and therefore entitled to strict scrutiny. Thus, the IHRA plaintiff class is not a racial one and strict scrutiny is not appropriate.

However, even if this court were to view the IHRA classification as an entirely racial one, strict scrutiny would still be inappropriate. It is axiomatic that an equal protection violation cannot exist unless the classification which treats one group (the IHRA plaintiffs) differently also causes that group to be worse off than the alternative class. When legislative classifications benefit the class created by the legislation, no equal protection burden is imposed on that class. As was just explained above, the IHRA provides a class—discriminatees—with something they would not and did not have in the absence of the IHRA—a cause of action for discrimination. The IHRA has not worsened the position of discriminatees. Not only has the IHRA enhanced the legal position of discriminatees relative to their position prior to the IHRA, but because of the very existence of the IHRA discriminatees now have more legal tools available to them than nondiscriminatees. Without legislation burdening a class, no equal protection question is raised. The court need not even inquire into which level of scrutiny is appropriate because the scrutiny inquiry presupposes that the class challenging a classification has been burdened relative to the alternative class. Here, discriminatees enjoy all the legal cause of actions that non-discriminatees enjoy, plus the IHRA cause of action. Therefore, this court doubts whether any equal protection scrutiny of this legislation is required. In any event, plaintiffs' arguments for applying strict scrutiny have certainly failed. Even if this court is required to apply a rational relation scrutiny to the classification created by the IHRA, plaintiffs' equal protection claim must be dismissed. Defendant suggests at least two rational bases for state's decision to create the IHRA claim without a hearing guaranteed. Plaintiffs do not deny the legitimacy of these bases.

First, the state could have decided that claims of discrimination were so important that they were best handled by a supportive state agency rather than by the individual in a private lawsuit, unaided by state resources. As part of that decision, the state might have rationally determined that in order for the agency to function proper-

ly, a full hearing at the investigation stage in every case might not be feasible. Indeed, defendant argues that a full hearing at the investigative stage will destroy the agency's ability to expeditiously screen out baseless charges of discrimination in order to permit careful processing of more substantial charges. Alternatively, the state might have rationally reasoned that a non-adversarial investigation might better serve the interests of innocent respondents than would a hearing. *See* Ill.Rev.Stat. ch. 68, ¶ 1–102(E) (one of the purposes of IHRA is to protect citizens against unfounded charges of unlawful discrimination). Given the legitimacy of these two purposes (agency efficiency and protecting innocents) and the rationality of the relationship of the no-hearing provision to these purposes, there is no equal protection violation.

### CONCLUSION

The motion to dismiss the complaint for failure to state a claim for which relief can be granted is denied as to the due process count and granted as to the equal protection count.

It is so ordered.

### On Motion for Reconsideration

On October 8, 1985, this court denied defendant's motion to dismiss plaintiffs' claim that certain provisions of the Illinois Human Rights Act (IHRA), Ill.Rev.Stat. ch. 68, ¶¶ 1–101 to 9–102 (1983) violate plaintiffs' procedural due process rights. Specifically, the court held that the IHRA might be constitutionally defective if the administrators investigating whether substantial evidence exists to support a civil rights charge do not, in fact, guarantee complainants an opportunity to present reasons why such substantial evidence exists. In explaining this ruling the court pointed out that to prevail plaintiffs must prove that this procedural defectiveness, which is permitted by the language of the IHRA, is actually implemented by the practices of the Illinois Human Rights Commission and Illinois Human Rights Department.

Defendant now moves for a reconsideration of the October 8 order. In so moving, defendant basically raises two arguments. First, the Illinois Supreme Court has recently held, in *Rossetti Contracting Co., Inc. v. Court of Claims*, 485 N.E.2d 332 (1985), that a state agency may not interpret a statute so as to deprive a person of an opportunity to be heard on his or her claims. Therefore, defendant maintains, complainants do have an opportunity to present reasons in support of a finding of substantial evidence. Defendant's second argument is that even if the Department and Commission fail to permit a complainant to present reasons against dismissal of a civil rights charge, the Illinois state courts, on judicial review of a dismissal, are required to see that a complainant has been guaranteed procedural due process. The implication, presumably, that defendant would have the court make from this general proposition is that if a complainant has not been afforded an opportunity to present reasons against dismissal, a reviewing court will necessarily order a remand and require that the complainant be given such an opportunity.

As to defendant's first argument, its reliance on the *Rosetti* case is misplaced. The proposition set forth in that decision—that state agencies cannot interpret statutes so as to deny claimants an opportunity to be heard—is completely consistent with the October 8 ruling. The question presented here is whether, as a matter of fact, the Department and the Commission are providing complainants with their constitutional right, acknowledged by *Rosetti*, of an opportunity to be heard. The October 8 ruling held that the "opportunity to be heard" in this context includes at least an opportunity to present reasons why substantial evidence exists to support a civil rights charge. Therefore, whether the Department and Commission are providing this opportunity to complainants is a question of fact for trial or a motion for summary judgment. No ruling of law can resolve such a question.

Defendant's second argument is slightly more complex. The basic proposition is

that circuit court review of administrative action will cure any procedural defectiveness in the IHRA because if a complainant is indeed deprived of an opportunity to present reasons against dismissal, the circuit court will order a remand so as to provide the complainant with that opportunity. In support of this argument, defendant first cites to *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), which this court relied on in the October 8 opinion. Defendant cites *Logan* to support its contention that the judicial review provisions of the IHRA are adequate to protect a complainant's due process rights. Defendant overlooks the critical fact that the version of the IHRA applicable at the time *Logan* was decided *required* that the Commission hold a factfinding conference within a 120-day period. *Logan v. Zimmerman Brush Co.,* 455 U.S. at 427, 102 S.Ct. at 1153, citing to *Zimmerman Brush Co. v. Fair Employment Practices Comm'n,* 82 Ill.2d 99, 44 Ill.Dec. 308, 411 N.E.2d 277 (1980). Given this requirement, it is not surprising that the Supreme Court found no reason to criticize the judicial review provisions as not protecting a complainant's due process rights. Justice Blackmun, in his majority opinion, was careful to point out that the current IHRA, providing for only a discretionary fact-finding conference, presents an entirely different constitutional question, one not presented by or decided in the *Logan* case itself:

> After the inception of the present litigation, the Illinois Legislature repealed the FEPA [Illinois Fair Employment Practices Act], and put in its place the ... Illinois Human Rights Act.... The new Act modifies a number of the FEPA's procedural provisions; most important for present purposes, it commits to the Department's *discretion* the decision whether to hold a factfinding conference. ¶ 7–102(c)(3).
>
> These revisions have no effect on Logan's case, however, for the Illinois Supreme Court has ruled that the Human Rights Act is not to be applied retroactively.

*Logan v. Zimmerman Brush Co.,* 455 U.S. at 425, n. 1, 102 S.Ct. at 1152, n. 1 (citations omitted; emphasis original). The question not addressed in *Logan* —whether a complainant has a constitutional right to more than discretionary fact-finding procedures—is precisely the question raised by this case. *Logan,* therefore, does not itself determine for this court whether judicial review of agency action can cure the procedural inadequacy of failing to guarantee a complainant a right to present reasons against dismissal.

Perhaps recognizing that *Logan* is itself inadequate authority, defendant refers the court to Illinois law for the proposition that circuit courts have a mandatory obligation to remand a case to an administrative agency for the taking of evidence where the record from that agency is "inadequate." Defendant argues that this authority leads to the conclusion that where the Department or Commission has failed to provide a complainant with an opportunity to present reasons in favor of a finding of substantial evidence, a circuit court will necessarily remand the case to afford the complainant with that opportunity.

The law defendant cites simply does not support the conclusion it advances. The power to remand a case is defined by Ill. Rev.Stat. ch. 110, ¶ 3–311(a)(7) which provides that the "Circuit Court has power where a hearing has been held by the agency, to remand for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it shall appear that such action is just." Thus, the circuit court's remand authority is not mandatory by statute—the circuit court merely has the "power" to remand. Further, that power is authorized only when the agency has already held a hearing. It is true, however, that Illinois case law has added a judicial gloss to the remand statute that is more favorable to defendant. *Sahara Coal Co., Inc. v. Department of Mines & Minerals,* 103 Ill. App.3d 115, 124, 59 Ill.Dec. 109, 116, 431 N.E.2d 394, 401 (5th Dist.1982) held that "the powers of remandment granted to the

circuit court ... may be exercised even if no hearing has been held by the agency involved in the proceedings." However, even this gloss still leaves to the circuit court discretionary remand authority. Unless the complainant is assured of a remand as a matter of right, and unless that remand requires the agency to hear the complainant's evidence or other reasons against dismissal, the procedural defect in the IHRA procedure is not cured by judicial review.

Defendant argues that an additional gloss has been read onto the remand statute and this gloss does in fact require circuit courts to remand a civil rights case to the IHRA administrative network when a complainant has not been given a chance to present reasons against dismissal. In support of its argument, defendant cites *Board of Education of Minooka Community v. Ingels*, 75 Ill.App.3d 335, 337, 31 Ill.Dec. 153, 156, 394 N.E.2d 69, 72 (3d Dist.1979), which held that "[w]here the record of an administrative hearing is clearly inadequate, the case should be remanded even though the power to remand under the Administrative Review Act is discretionary rather than mandatory." *Ingels* does not support defendant's position because the concept of "inadequacy" that *Ingels* takes requiring a remand is not the same as the inadequacy of failing to guarantee the complainant an opportunity to present reasons against dismissal. Rather, *Ingels* held that an inadequacy occurs when an agency "applies the wrong standard to the evidence before it," so that "any resulting finding is invalid," and therefore cannot be judicially reviewed. *Ingels*, 31 Ill.Dec. at 155, 394 N.E.2d at 71. Nothing in *Ingels* discusses whether the procedures of the IHRA are inadequate. *Ingels* pertains only to an agency's failure to apply the correct evidentiary standard to the evidence before it. *Ingels*, and the other authority defendant cites, say nothing about whether an agency's failure to give a complainant an opportunity to present reasons why her or his charge should not be dismissed is "inadequate" under Illinois law. Therefore, there is no reason to believe that a complainant who has been denied an opportunity to present reasons against dismissal will be guaranteed a remand on review.

Of course, it is certainly plausible that a circuit court would consider itself obligated to remand an IHRA dismissal if the IHRA agency's record was empty. But an empty record is not plaintiffs' concern. Plaintiffs are objecting to the lack of an opportunity to present, on their own behalf, evidence or reasons against dismissal. As stated in the October 8 ruling, the IHRA requires the Department and Commission to investigate a civil rights charge. In investigating a charge, the IHRA agencies may compel the production of documents and the testimony of witnesses. It may even convene a fact-finding conference. In the course of exercising its discretionary powers during the investigation, a record is sure to develop. The constitutional inadequacy with this procedure is not that an empty record is possible, but that nothing in the language of the IHRA *requires* that the IHRA administrators guarantee complainants the right to put into the record their own evidence and arguments—i.e., reasons—against dismissal of the charge. This infirmity was and is significant enough to survive defendant's motion to dismiss, and so this court held on October 8. It is now incumbent upon plaintiffs to prove that the IHRA administrators, in implementing the IHRA, are in fact denying some or all complainants this vital opportunity. No procedure for terminating a property right—which a civil rights charge clearly is—can ever pass constitutional muster if the holder of that right is not given an opportunity to say something to the authority that has the power to take the right away.

Finally, the fact that plaintiffs did not allege in their complaint that they were denied an opportunity to present reasons against dismissal is immaterial. The federal rules require notice, not fact, pleading. Plaintiffs satisfied this requirement by alleging that the IHRA denied them due

process by not giving them an opportunity to be heard.

### Conclusion

Defendant's motion for reconsideration of the October 8 ruling which denied in part defendant's motion to dismiss is hereby denied.

It is so ordered.